# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

STANDARD OIL COMPANY v. COMMONWEALTH

AND

AMERICAN CAN COMPANY v. COMMONWEALTH.

December 14, 1905.

1. FOREIGN CORPORATIONS—*Exclusion from State.*—A State has unlimited power to prescribe the terms and conditions upon which foreign corporations may do business within its limits, and may, if it chooses, exclude them altogether.

2. FOREIGN CORPORATIONS—*Public Service Corporations—Fees to State —Revenue Laws—Construction.*—The fee prescribed by statute to be paid by every foreign corporation authorized by its charter to exercise the powers of a transportation or transmission company as a prerequisite to its right "to do business in this State" must be exacted of every such corporation before it can do *any* business in this State, whether that of a public service corporation or not. If the character of the foreign corporation confers upon it the right to exercise the powers of a transportation or transmission company, it is within the language of the statute and must pay the fee, although it has never exercised such power in any State, and does not ask to exercise it in this State, and the Legislature of this State is forbidden by the Constitution to confer such power. The test of liability for the fee is not whether the corporation can or intends to carry on the business of a public service corporation, but whether its charter authorizes it to carry on that business. If so authorized, then it belongs to the class upon which the Legislature has laid the burden, and the fee must be paid. *Keith, P.,* and *Cardwell, J.,* dissenting.

3. TAXATION—*Validity of Tax—Construction—As between State and Foreign Corporations.*—The rule that doubts as to the validity of a tax are to be resolved in favor of the citizen has no application to the case of a foreign corporation asking for the privilege of doing . business in this State.

4. STATE CORPORATION COMMISSION—*Action Presumed to be Right.*—

The action of the State Corporation Commission in imposing a fee or tax on a foreign corporation seeking to do business in this State is to be regarded as *prima facie* correct, as in other cases. Constitution, Sec. 156, cl. (f).

Appeal from the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Christain & Christain,* for the appellants.

*Attorney-General Wm. A. Anderson,* for the Commonwealth.

HARRISON, J., delivered the opinion of the court.

This is an appeal from a judgment of the State Corporation Commission, imposing a fine of ten dollars and cost, under section 1105 of the Code, as amended by the act of May 15, 1903, upon the Standard Oil Company for the alleged offense of transacting business within the State of Virginia without having first obtained from the Corporation Commission the certificate of authority required by law.

It appears from the record that the Standard Oil Company is a foreign corporation, created and organized under the laws of New Jersey, with an authorized capital stock of one hundred and ten million dollars. It further appears that the appellant company is authorized by its charter to exercise some of the franchises and powers of a public service corporation.

The solution of the present controversy involves a construction of section 37 of the revenue law of Virginia, (Code, 1904, p. 2214) which provides as follows: "Every domestic corporation authorized by its charter to exercise the powers of a transportation or transmission company, or to own, lease, construct, maintain and operate a public service line or road of any kind,

upon the granting or extension of its charter, and every foreign corporation authorized by its charter to exercise the powers of a transportation or transmission company, or to own, lease, construct, maintain and operate a public service line or road of any kind, when it obtains from the State Corporation Commission a certificate of authority to do business in this State, shall pay a fee into the treasury of the State of Virginia to be ascertained and fixed as follows:" Then follows a table of the fees to be paid, graded according to the maximum capital stock authorized by the terms of the charter.

According to this table, the fee for the appellant company, having a maximum authorized capital of $110,000,000, is fixed at $5,000.

It will not be denied that a State has unlimited power in the matter of prescribing the terms and conditions upon which a foreign corporation shall be permitted to do business within her limits, and that, if she chooses, such corporations can be excluded entirely. *Bank of Augusta* v. *Earle,* 13 Peters 519, 10 L. Ed. 274; *Lafayette Insurance Co.* v. *French,* 18 How. 404, 15 L. Ed. 451; *Paul* v. *Virginia,* 8 Wall. 168, 19 L. Ed. 357; *Lucat* v. *Chicago,* 10 Wall. 410, 19 L. Ed. 972. Therefore, the sole question to be determined in this case is what are the terms and conditions upon which the appellant corporation is permitted to do business in this State?

These are prescribed by section 37 of the revenue law as follows: "Every foreign corporation authorized by its charter to exercise the powers of a transportation or transmission company, etc., when it obtains from the State Corporation Commission a certificate of authority to do business in this State, shall pay a fee into the treasury of the State of Virginia to be ascertained and fixed as follows:"

It is clear from this language that a foreign corporation which is authorized by its charter to do the business of a public service

corporation must, in order to carry on business *of any kind* in this State, obtain from the State Corporation Commission a certificate of authority to do such business, and pay into the State treasury the fee prescribed for such certificate; the test of its liability for such fee being, not whether it can or intends to carry on the business of a public service corporation, but whether its charter authorizes it to carry on that business. No matter which of the numerous businesses authorized by its charter it may be carrying on or proposing to conduct in Virginia, if it is authorized by its charter to carry on the business of a public service corporation, her condition is that the fee prescribed by the section mentioned shall be paid into her treasury.

It is insisted on behalf of the appellant company, that the language of section 37 of the revenue law, "to do business in this State," has reference only to doing the business of a public service corporation; that if appellant was asking for authority to carry on the business of a public service corporation, it would be liable for the fee imposed by section 37, because it is "the business in this State" which is contemplated to be done, or possible for the corporation to do, for which the "certificate of authority" is issued and the fee "ascertained and fixed;" that, inasmuch as appellant cannot carry on the business of a public service corporation in Virginia, by reason of the inhibition of section 163 of her Constitution, therefore it follows that the Corporation Commission could not have granted it authority to exercise any such powers; that it never could have been the intention of the Legislature of the State to tax the petitioner on a business which it did not ask the privilege of doing, and which the Legislature could not empower it to carry on in the State.

The object of this revenue law was not in our opinion, to confer upon foreign corporations authority to exercise any par-

ticular power granted by their respective charters. The language of section 37 was employed as a means of designating and classifying certain foreign corporations, and fixing the rate of fee that should be paid by such corporations for the certificate of authority to carry on *any business* in Virginia. The intent of the statute is that corporations, whether created under the laws of Virginia, or coming into the State as foreign corporations, having under their charters extensive powers in connection with the operation of transportation and transmission companies, shall pay a larger fee than ordinary industrial companies. The Legislature might well have enacted that a foreign corporation having powers of this character in its charter, should be required to pay more than one not having such powers, although these powers could be exercised in some other State or States but not in Virginia.

Giving the language of section 37 its literal and natural interpretation, it seems plain that the fee prescribed had no relation or reference to the character or the amount of business to be transacted by the foreign corporation in this State, but was ascertained and determined first by the character of the chartered powers of the corporation in the State of its domicil, and second, by the maximum amount of its authorized capital. The fact that a foreign company possessed, among others, the great powers of a public service corporation was doubtless regarded by the Legislature as sufficient evidence of its capacity and importance as a business enterprise, no matter what business it might conduct, to justify its being placed in a higher class than its less pretentious neighbors.

Whether the criterion adopted be arbitrary or not, it is a method of determining the fee to be paid which the General Assembly chose to adopt, and had the right to prescribe.

Nor did the business to be carried on by the foreign corpora-

tion in this State have any bearing upon the question, whether a particular corporation was embraced within the class of corporations mentioned in section 37. That question was to be determined solely by the inquiry, whether such corporation had, by virtue of its charter, the powers of a public service corporation. If it had those powers, then it belonged to the class, and came within the terms of section 37, and must pay the fee there prescribed.

It is further contended that appellant belongs to the class of corporations named in section 38 of the revenue law, and, therefore, is only liable to pay a fee of $600, as prescribed by that section.

It is only neccessary to say, that appellant being, as we have held, *included* in the class designated by section 37, it is by the express terms of section 38, excluded from that class of corporations there referred to; the language of section 38 being, that every foreign corporation *other* than such as are described in the last preceding section (37) shall pay, etc.

It is suggested that in case of doubt as to the validity of a tax, the doubt should be solved in favor of the citizen. We recognize the soundness of this principle when applied to the State and her citizens; but it has, we think, no application to this case where the party complaining is not a citizen of Virginia but a foreign corporation, merely asking for the privilege of doing business in this State. We have, however, no doubt of the correctness of the construction placed upon section 37 by the State Corporation Commission. If we entertained doubt merely, our hesitation would have to be solved in favor of the State, as the Constitution requires us to regard the action of the Corporation Commission as *prima facie* correct. Const., sec. 156, cl. f.

For these reasons, the judgment complained of must be affirmed.

In the case of the *American Can Company* v. *Commonwealth,* HARRISON, J., speaking for the Court, said:

This appeal from the State Corporation Commission involves the precise question decided to-day in the case of *Standard Oil Company* v. *Commonwealth,* and for the reasons there given and filed with the record, the judgment here complained of must be affirmed.

KEITH, P. (dissenting):

I am unable to agree with the view expressed by the court, and deem the question involved of sufficient interest to justify me in filing a dissenting opinion.

As the two cases are identical, I shall refer only to the case of the Standard Oil Company.

This is a corporation chartered under the laws of the State of New Jersey, which has very varied and extensive privileges. It appears that by its charter it is authorized to exercise the powers of what is known in the laws of this State as a public service corporation. It further appears, however, that it has not, either in this State or elsewhere, exercised such powers, and the question for consideration is, whether it is taxable as a public service corporation, or whether it is taxable under another section of the statute and liable to the payment of a less fee for the exercise of such business as it is actually engaged in within the limits of the State of Virginia.

Section 37 of the revenue law of the State (Code, 1904, p. 2214,) is as follows: "Every domestic corporation authorized by its charter to exercise the powers of a transportation or transmission company, or to own, lease, construct, maintain and operate a public service line or road of any kind, upon the granting or extension of its charter, and every foreign corporation authorized by its charter to exercise the powers of a trans-

portation or transmission company, or to own, lease, construct, maintain and operate a public service line or road of any kind, when it obtains from the State Corporation Commission a certificate of authority to do business in this State, shall pay a fee into the treasury of the State of Virginia, to be ascertained and fixed as follows:" Then follows a table fixing the fee in each case according to the maximum capital authorized, and according to which table the fee to be paid by the Standard Oil Co. would be five thousand dollars.

By section 38 of the revenue law, (Code, 1904, p. 2215) it is provided that "Every domestic corporation, other than such as are described in the last preceding section, upon the granting or extension of its charter, and every foreign corporation, other than such as are described in the last preceding section, when it obtains from the State Corporation Commission a certificate of authority to do business in this State, shall pay a fee into the treasury of the State of Virginia, to be ascertained and fixed as follows:" Then follows a table fixing these fees, which would make the tax on the Standard Oil Company six hundred dollars, which amount has already been paid into the treasury of the State.

By section 163 of the Constitution of the State, it is provided, that "No foreign corporation shall be authorized to carry on in this State the business, or to exercise any of the powers or franchises of a public service corporation, or be permitted to do anything which domestic corporations are prohibited from doing, or be relieved from compliance with any of the requirements made of similar domestic corporations by the Constitution and laws of this State where the same can be made applicable to such foreign corporation without discriminating against it. But this section shall not affect any public service corporation whose line or route extends across the boundary of

this Commonwealth, nor prevent any foreign corporation from continuing any such lawful business as it may be engaged in in this State when this Constitution goes into effect. But any such foreign public service corporation so engaged shall not, without first becoming incorporated under the laws of this State, be authorized to acquire, lease, use or operate within this State any public or municipal franchise or franchises in addition to such as it may own, lease, use or operate when this Constitution goes into effect."

The contention on the part of the Commonwealth is that the Standard Oil Company is within the letter of section 37, which imposes a fee upon every foreign corporation authorized by its charter to exercise the powers of a transportation or transmission company; that these words are descriptive of a class upon which the higher rate of fee, or taxation (by whichever term it may be called), is to be imposed; that inasmuch as the Standard Oil Company is, by its charter, authorized to exercise the powers of a transportation or transmission company, it is taxable as such, though it is conceded that it has never exercised, and that by section 163 of the Constitution, which has been quoted, it is prohibited from exercising any such powers.

To me it seems plain, that to adopt this construction is, with all respect to the majority of the court, to "stick in the bark;" that the section is to be read as a whole, and not in disjointed parts; and that the language relied upon to justify the imposition of the fee which has been demanded is qualified by that which follows, to-wit: that "when it obtains from the State Corporation Commission a certificate of authority to do business in this State, shall pay a fee into the treasury of the State of Virginia, to be ascertained and fixed as follows:"

It is inconceivable to me that the State of Virginia is to be put in the attitude of exacting a fee for "a certificate of author-

ity to do business in this State," when by the terms of its own organic law it has solemnly declared that "No foreign corporation shall be authorized to carry on in this State the business, or to exercise any of the powers or franchises of a public service corporation," unless it comes within the exceptions to section 163 of the Constitution, which it is not pretended is the case here.

But it is said, that unless the effect attributed by the opinion of the court to this section be the true one, the language of the act, which imposes a tax upon every foreign corporation authorized by its charter to exercise the powers of a transportation or transmission company, would be inoperative; but that I apprehend not to be the case. There are foreign corporations, authorized to carry on the business of public service corporations in this State, which are liable to the payment of the fees prescribed by section 37, because they come within that clause of section 163 of the Constitution, which provides that "this section shall not affect any public service corporation whose line or route extends across the boundary of this Commonwealth, nor prevent any foreign corporation from continuing any such lawful business as it may be engaged in in this State when this Constitution goes into effect." To illustrate—the Baltimore and Ohio Railroad Company, and the Louisville and Nashville Railroad Company, could with propriety be assessed under section 37 of the law.

The Standard Oil Company not having been engaged, either before or since the adoption of the Constitution, in the business of a public service corporation within this State, will not be allowed, under section 163 of the Constitution, to do such business, unless it goes before the State Corporation Commission and becomes incorporated under the laws of this State, and such a charter having been granted constitutes it a domestic

corporation, and it would, of course, be entitled to exercise all the powers and functions conferred by its charter, including those of a public service corporation, and would then be within the terms of section 37, and be properly charged with the fees which its prescribes.

It is not contemplated by the law that this extraordinary fee under section 37 shall be levied but once; having been once levied and paid the law with respect to the corporation so paying it is satisfied. But if, under the view of the law presented by the majority opinion, the Standard Oil Company be required to pay a fee under section 37 in order to obtain a certificate of authority to do business in this State, it will be prohibited by the Constitution from doing the very business upon the basis of which the fee is charged; and, if it should then come forward and ask to have issued to it a domestic charter, would come squarely within the terms of section 37 and be required to pay the fee a second time.

It is axiomatic that before an imposition by the government can be enforced upon the citizen, the will of the sovereign which imposes the burden must be clearly and exactly declared. It has been said, that in such a case to doubt is to deny the authority, and it does seem to me that if the construction of the majority of the court is what was intended by the Legislature, it should have been clothed in less ambiguous terms.

CARDWELL, J., concurs with KEITH, P.

*Affirmed.*