ATCHISON, T. & S. F. RY. CO. v. STATE *et al.*

No. 443.    Opinion Filed February 9, 1909.

(100 Pac. 11.)

1.    CARRIERS—Regulation—Maintenance of Public Service "Facilities"—Telephones. The telephone is an indispensable aid in the conduct of the business of a common carrier at any center of population, and has become a necessity, both within the rule of the common law, as well as by the provisions of section 18, art. 9 (section 222, Bunn's Ed.; Snyder's Ed. p. 238), of the Constitution of Oklahoma.

2.    SAME—Evidence. With only one railroad station in a town having one telephone exchange, and an inland town about six miles distant with about 300 population having a telephone exchange, said town receiving all of its freight by the way of said station and a telephone installed and maintained in said station, connected with both exchanges, it appearing that the installing and maintaining of such telephone would be to the convenience of the patrons of said railroad station, the order of the Corporation Commission requiring a telephone to be installed and maintained in said station will not be disturbed in this court.

3.    CORPORATION COMMISSION—Regulation of Carriers—Presumptions in Favor of. Prima facie just, reasonable, and correct,

in section 22, art. 9 (section 235, Bunn's Ed.; Snyder's Ed. p. 259) of the Constitution, is a presumption arising upon the finding of the Corporation Commission that the order based upon such facts is presumed on appeal in this court to be just, reasonable, and correct, subject to be overcome or rebutted by the facts in the record, as weighed and found by this court in reviewing the same.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

Petition by the State and others before the Corporation Commission, against the Atchison, Topeka & Santa Fe Railway Company. From the order entered against the Railway Company, it appeals. Affirmed.

On the 8th day of May, A. D. 1908, the patrons of the Blackburn-Skedee Telephone Company petitioned the Corporation Commission to require the Atchison, Topeka & Santa Fe Railway Company to install and maintain a telephone in its station or depot at Skedee, Okla. Said railway company, hereinafter referred to as appellant, was notified of the filing of said petition and the setting of the matter for hearing on the 23d day of July, A. D. 1908. On said date, appellant appeared through its attorney, and the petitioners appeared through the Assistant Attorney General of the state.

The proof at said hearing showed that there was a telephone exchange at Skedee, and also one at Blackburn, which is an inland town, six miles from Skedee, a railway station on the line of appellant; that, if a telephone was installed and maintained in the railway station at Skedee, it would be for the material convenience of the citizens of Blackburn, in the way of transacting business with said railway station in ascertaining when there was freight at said station, in order that they might send a freight wagon or conveyance for same; that there was an average of at least one wagon load of freight hauled from said station to the town of Blackburn each day of the year, frequently there being a dozen wagon loads per day, and that it was for the convenience of the people to have a means of ascertaining when their freight

reached said station, in order that they might be advised as to when to send a conveyance after it; that without such telephone it worked a serious inconvenience in having to wait until they were notified by mail by the station agent, which would occasion a delay of about 24 hours, or sometimes result in paying demurrage; that frequently, when they would approximate the time when the freight would reach the station from the place of consignment and send a conveyance after it, they would be disappointed; that the station in Skedee was about three or four blocks from the main part of the business portion of said town, to whom a telephone in the station would be a convenience; that the charge per month for installing and maintaining a business telephone in said station was $2; that mail went from Skedee to Blackburn only once per day; that the telephone company furnished free service for its exchange members over its line from Blackburn to Skedee, and *vice versa;* that Blackburn has a population of about 300; that it would be convenient for the residents of Skedee, in order to be notified as to when the trains were on time or when their freight had arrived, etc.; that there is only one railroad running into the town of Skedee; that it has been the custom of the railway agent at Skedee, when freight is received at that station billed to Blackburn, to notify the consignee by mail, by means of a postal card; that the exchange operator at Skedee notifies the exchange operator at Blackburn when the trains are late, and when they are on time.

On the 25th day of August, A. D. 1908, the Commission entered a final order in said cause, the main body of which is in words and figures, as follows:

"On the 9th day of May, 1908, the citizens of Skedee filed a complaint with the Corporation Commission, asking that the defendant be required to place a telephone in its depot at the town of Skedee, that the public may have the use thereof and the convenience it affords in transacting business with the defendant.

"On the 23d day of July, 1908, the case was heard by the Commission, and evidence having been introduced by the complainants and the defendant, after a due consideration of the

same, the Commission finds that a telephone in the depot at Skedee is a necessary convenience to the people of Skedee and vicinity, and that the conditions are similar to most all depots in the state of Oklahoma where there is a telephone exchange maintained in the town.

"The Commission further finds from the evidence that at the town of Skedee, there is operated a small telephone exchange, also at Blackburn, an inland town, of about three hundred people, there is a small telephone exchange, and that the two towns are connected by a toll line with free service to the subscribers of each exchange, and that there are also other rural lines in the vicinity; that the depot at Skedee is about three or four blocks from the business section of the town, and that, in addition to the freight delivered to the people of Skedee and vicinity, the town of Blackburn, and probably other inland towns, receive their freight there. The evidence further shows that by the use of the telephone it avoids delays to those having rural telephone lines in waiting for mail, inasmuch as many people living six or seven miles in the country, who have gone to the expense of equipping themselves with rural telephones, could not receive any communication through the post office of the arrival of freight without making a trip to the post office. This is a great inconvenience, and unnecessary expense under the telephonic system of communication, in the busy season of the year. By the use of the telephone at depot, in informing the telephone central office of the time of the arrival of passenger trains, the general public in the town in communication with the exchange can ascertain the lateness of the train, and thereby avoid the annoyance and the exposure of standing around depots in great crowds, with a constant string of questions to the agent, thereby impeding the efficiency of his service.

"The Commission is of the opinion that it is the duty of the defendant to furnish a means of communication with the public according to the modern usages and customs. If the defendant should place a deaf and dumb person in charge of the station at Skedee, it could not be contended that this was adequate service, and inasmuch as all business, such as inquiring as to the time of trains, the arrival of freight, rates, and various other questions, can be, and usually is, transmitted over the phone, we see no reason why the same means should not be extended and become

a part of the service between the railroad companies and their patrons and customers.

"Our conclusion on this point is strengthened by the fact that railroads at most all competitive points have found it necessary to install telephone service in their stations. If this service is necessary at competitive points and the railroad is willing to pay for the same, we see no reason why it should not be required to install the same service at other points similarly situated.

"The only objection the defendant makes to the installation of this service at Skedee is that it will entail a cost of $2.00 per month, notwithstanding the fact in notifying all of its customers of the arrival of freight as required, if the same had to be done by mail, would entail a greater cost in postage than $2.00 per month. While the contention of the defendant is that this service would be of no financial benefit to it, and would not assist in the transaction of its business, the Commission does not agree with these contentions, and is of the opinion that a telephone in depots does assist the defendant in the proper transaction of its business, and that this small item of $2.00 per month should be paid by the defendant as it gladly pays its charge where it has competition and possibly does less business than at Skedee, and for the further reason that it is impracticable to depend upon a community to pay such expenses by contribution.

"The Commission is of the opinion, and holds, that a telephone in a depot where there is a telephone exchange maintained in the town is a necessary and essential part of the equipment to make the facilities and the service at any depot adequate for the reasonable use and necessities of the public.

"It is therefore ordered by the Corporation Commission that the defendant, the Atchison, Topeka & Santa Fe Railway Company, install and maintain a telephone station at its depot in the town of Skedee for the use of its agent in answering all inquiries of the public for which telephones are usually used, and that said telephone station shall be installed not later than the 15th day of September, 1908, and maintained until further ordered by the Commission."

The following assignments of error are made by the appellant:

(1) That said Commission was without jurisdiction or authority to make the order entered in said case.

(2) That the said Commission erred in its opinion and

judgment that it is the duty of this plaintiff in error to furnish a means of communication with the public according to modern usages and customs.

(3)   That said Commission erred in finding that it is the modern usage and custom to furnish means of communication with the public by railroad companies other than through their places of business, regularly established for the handling and transaction of business coming to them as a carrier, and particularly because there was no evidence whatever to sustain such a finding.

(4)   The plaintiff in error further says that the findings of said Commission are erroneous wherein it finds that this defendant maintains telephone connections at all places where there is competition, because said finding is not true, and because there is no evidence to support it.

(5)   That said Commission further erred in its finding that a telephone in the depot, where there is a telephone exchange in the town, is a necessary, essential part of equipment to make the facilities and services of any depot adequate for the benefit and interest of the public, because the said conclusion is not true as a matter of fact, and because the same is without evidence to support it.

(6)   That said Commission erred in that part of its finding in making the following order:

"It is therefore ordered by the Corporation Commission that the defendant, the Atchison, Topeka & Santa Fe Railway Company, install and maintain a telephone exchange at its depot in the town of Skedee for the use of its agent in answering all inquiries of the public for which telephones are usually used."

(7)   That the said Commission erred in directing that said station should be installed not later than the 15th day of September, 1908, and maintained until further order of the Commission.

(8)   That said judgment and order are erroneous and void because this defendant is not engaged in the operation of a telephone or a line of telephones, and was made so as to operate for

the special interest and benefit of telephone lines and telephone companies operating telephone lines in the state of Oklahoma.

(9)    That said order imposes upon this plaintiff in error a duty not incumbent upon it as a common carrier; and amounts to requiring it to pay for service not required by law as a part of its duties as a common carrier, and imposes an additional burden upon it, which amounts to the taking of its property without due process of law under the fourteenth amendment of the Constitution of the United States.

(10)    That said order is unreasonable, unnecessary and imposes a burden not contemplated by law or by the charter of this plaintiff in error, upon it, and thereby deprives it of its property without due process of law under the terms and provisions of the Constitution of the United States.

(11)    That said order is general in its nature, and contemplates the installation of telephones at the stations of the plaintiff in error throughout the state, imposing a burden of more than $2,500 annually upon the plaintiff in error, without any compensation therefrom, and that the burden thus imposed involves more than the sum of $5,000.

(12)    That under said order a burden is imposed upon plaintiff in error herein to its damage in more than the sum of $5,000, and its property taken without due process of law in excess of said amount.

The appeal from this order is now properly before this court for determination.

*Cottingham & Bledsoe,* for appellant.

*G. A. Henshaw,* Asst. Atty. Gen., for appellee.—The Commission had jurisdiction to make the order complained of: Const. Okla. § 18, art. 9. The order is *prima facie* reasonable: Const. § 22, art. 9; *Standard Oil Co. v. Commonw.,* 104 Va. 683; *Mc Cord v. L. & N. Ry. Co.,* 183 U. S. 495. A telephone is such facility or convenience as contemplated in Const. § 18, art. 9: *Hopkins v. U. S.,* 171 U. S. 591.

WILLIAMS, J. (after stating the facts as above). We will consider all the assignments of error under two propositions: (1) Had the Commission jurisdiction to make the order complained of? (2) If so, was the order reasonable and just?

1. Section 18, art. 9 (section 222, Bunn's Ed.; Snyder's Ed. p. 238), of the Constitution of Oklahoma provides:

"The Commission shall from time to time prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service facilities and conveniences as may be reasonable and just, which said rates, charges, classification, rules, regulations and requirements the Commission may from time to time, alter or amend."

Freund on Police Power, in section 395, p. 411, says:

"Within the scope defined by the charter, the business must be provided with facilities adequate to render the service offered to the public and which may be expected to be called for under ordinary conditions, though not sufficient to cope with an unusual pressure or emergency. * * *"

There can be no question but that the Legislature of the state, unless otherwise in the organic charter thereof restricted, has the power to require railroad companies, in the carrying on of their business as common carriers, to afford every reasonable facility and convenience for the transaction of such business with the patronizing public. The only limitation upon such power is that the duty imposed must relate to the matter which is within the domain and a proper subject of police regulation, and that it is reasonable. *Railroad Commissioners v. P. & O. Cent. R. R. Co.,* 63 Me. 269, 18 Am. Rep. 208; 4 Bl. Com. 162; *Commonwealth v. Alger,* 7 Cush. (Mass.) 53; *Thorpe v. Rutland & Burlington R. R. Co.,* 27 Vt. 140, 62 Am. Dec. 625; *Lake Shore & Mich. So. Ry. Co. v. Ohio,* 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702; *Southern Ry. Co. v. State,* 125 Ga. 289, 54 S. E. 160, 114 Am. St. Rep. 203; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137, 14 L. R. A. (N. S.) 229; Cooley's Const. Lim. (7th Ed.) p. 844,

and authorities cited in footnotes 1 and 2; 23 Am. & Eng. Ency. of Law, pp. 727, 728.

The sovereignty, expressing its will through the organic law, may confer such legislative authority upon the Corporation Commission. *Dreyer v. Illinois,* 187 U. S. 71, 23 Sup. Ct. 28, 47 L. Ed. 79; *Winchester & Strasburg R. R. Co. et al. v. Commonwealth,* 106 Va. 264, 55 S. E. 692; *Prentis et al. v. Atlantic Coast Line Co. et al.* (decided by the Supreme Court of the United States November 30, 1908, but not yet officially reported) 29 Sup. Ct. 67, 53 L. Ed.—

If a telephone is a facility or convenience, as contemplated in said section 18, art. 9, the Commission had jurisdiction to determine whether or not it would be just and reasonable to require the same to be installed in appellant's station at Skedee. Hence it becomes necessary to determine whether or not a telephone is a facility or convenience.

In the case of *Hopkins v. United States,* 171 U. S. 591, 19 Sup. Ct. 45, 43 L. Ed. 296, the court said:

"The commission agent, in selling the cattle for their owner, simply aids him in finding a market; but the facilities thus afforded the owner by the agent are not of such a nature as to thereby make that agent an individual engaged in interstate commerce, nor is his agreement with others engaged in the same business, as to the terms upon which they would provide these facilities, rendered void as a contract in restraint of that commerce. Even all agreements among buyers of cattle from other states are not necessarily a violation of this act, although such agreements may undoubtedly effect that commerce.

"The charges of the agent on account of his services are nothing more than charges for aids or facilities furnished the owner, whereby his object may be more easily and readily accomplished. Charges for the transportation of cattle between different states are charges for doing something which is one of the forms of, and which itself constitutes, interstate trade or commerce, while charges or commissions based upon services performed for the owner in effecting the sale of the cattle are not directly connected with, as forming a part of, interstate commerce, although the cattle may have come from another state. Charges for services of

this nature do not immediately touch or act upon, nor do they directly affect, the subject of the transportation. Indirectly, and as an incident, they may enhance the cost to the owner of the cattle in finding a market, or they may add to the price paid by the purchaser, but they are not charges which are directly laid upon the article in the course of transportation, and which are charges upon the commerce itself. They are charges for the facilities given or provided the owner in the course of the movement from the home *situs* of the article to the place and point where it is sold.

"The contract condemned by the statute is one whose direct and immediate effect is a restraint upon that kind of trade or commerce which is interstate. Charges for such facilities as we have already mentioned are not a restraint upon that trade, although the total cost of marketing a subject thereof may be thereby increased. Charges for facilities furnished have been held not a regulation of commerce, even when made for service rendered, or as compensation for benefits conferred."

In the case of *People's Telephone Co. v. Eastern Railway Co. of Minnesota et al.* (decided by the Railroad Commission of Wisconsin, October 12, 1908), it is said:

"The telephone is at present an 'indispensable aid in the conduct of almost every business and calling of any importance. No railroad company could manage its business at any center of population economically or satisfactorily without telephonic connection between its stations, warehouses, and grounds and the mercantile, manufacturing, and other places of business in the community. The duty of furnishing the public with adequate telephonic service for the purpose of transacting business with the railroad has been self-imposed in many instances by reason of usage and necessity. It has therefore become a necessary facility in such cases for the proper discharge of the transportation business of the railway company, within the rule of the common law as well as in contemplation of the express legislative enactments. While a carrier may select the agencies by which to serve the public, it may not select an agency exclusively which for any reason is incapable of fully discharging the duty of the carrier to the public. The right of the selection of facilities is limited by the condition that those selected are adequate and efficient for the purposes required."

In said opinion it is further said:

"As we view the situation, the only complaint against the adequacy of the telephone service afforded the public by the respondents that we may lawfully consider in this proceeding is that relating to the connections with the city ticket office on the Tower Avenue and the general freight offices. There was no contention on the part of respondents that the convenience of the public would not be subserved by the installation of petitioner's telephone in such offices. It seems to have been tacitly admitted that the services at such offices are inadequate to meet the requirements of the railroads in dealing with the shippers and in transacting the general passenger business, because of the inability to communicate by telephone with the subscribers of petitioner's exchange. The evidence shows that about one-half of the telephones in use at Superior have no connection with the respondent's offices, buildings, or grounds, excepting only the Union Depot and elevator 'S.' Under the circumstances disclosed by the evidence, we conclude and determine that the telephone facilities in the respondent's city ticket office and general freight office at Superior are inadequate for the satisfactory performance of their duty to the public as common carriers of freight and passengers, and do further find that in order to provide adequate telephonic connections with said office it will be necessary for the respondents to install, in each of said offices, one of the petitioner's telephones connected with its exchanges in the city of Superior."

We conclude that a telephone is a facility and convenience within the purview of section 18, art. 9, *supra*.

2. In the case of *Interstate Commerce Commission v. Louisville & Nashville R. R. Co.* (C. C.) 102 Fed. 709, Toulmin, District Judge, said:

"But the findings of fact in the report of the Commission are made by law *prima facie* evidence of the matters therein stated, and the conclusions of the Commission based upon such findings are presumed to be well founded and correct, and they will not be set aside unless error clearly appears. The record does not clearly show that the Commission's findings and conclusions on this branch of the case are erroneous, and not in accordance with the law and the evidence, and the court should not overrule or in any manner interfere with them."

In the case of *B., C. R. & N. Ry. Co. v. Dey*, 82 Iowa, 342,

48 N. W. 106, 12 L. R. A. 436, 31 Am. St. Rep. 477, the court said:

"We conclude that according to the obvious construction of the two statutes read together, that joint rates are not absolute, but are *prima facie* evidence only of their reasonableness and justness."

In the case of *Louisville & Nashville R. R. Co. v. Interstate Ry. Co.,* 107 Va. 225, 57 S. E. 655, the court said:

"It must be remembered that under section 156, cl. 'f,' of the Constitution of Virginia of 1902 (Code 1904, p. cclv), the finding of the Commission is *prima facie* correct, and all presumptions are therefore in favor of its action, and the burden is on the appellant to show that the wide discretion with which that tribunal is invested has been erroneously exercised."

In the case of *Newport News & Old Point Ry. & Electric Co. v. Hampton Roads Ry. & Electric Co.,* 102 Va. 850, 47 S. E. 858, the court said:

"As to the necessity and propriety of the crossing in question, authorized by the Corporation Commission, it need only be said that, in addition to the provision contained in the Constitution (article 12, § 156, cl. 'f'), that such rulings of the Commission are to be regarded as *prima facie* just, reasonable, and correct; and that the provisions of the statute referred to, there is nothing whatever in the record that overcomes, in the slightest degree, the presumption arising upon the finding of the Corporation Commission that the crossings authorized are necessary and proper to be made; nor is there anything in the record to sustain that contention that they are unnecessary and would be unsafe. On the contrary, the expert engineer, in his report, says as to the crossings, when constructed in accordance with the methods and specification furnished him by the chairman of the Corporation Commission: 'I consider them all necessary, and all reasonably safe, considering the conditions to be met. I would make no suggestions as to changes, additions, or safeguards. I believe that while these complicated crossings would retard the schedules of both roads, and will necessitate slow and careful running down Mellen street by both companies, they are not, with proper care and diligence on the part of both companies, associated with particular danger to passengers or to the public.' The right of the appellee to cross the tracks of appellant is not in question. It is the manner of

crossing, not for the benefit of the railroads, but for the benefit of the public. The object of creating the state corporation commissions was to protect the public rights by regulating public utilities."

In the case of *Standard Oil Co. v. Commonwealth,* 104 Va. 688, 52 S. E. 391, the court said:

"We have, however, no doubt of the correctness of the construction placed upon section 37 (Code Va. 1904, p. 2214), by the State Corporation Commission. If we entertained doubt merely, our hesitation would·have to be solved in favor of the state, as the Constitution requires us to regard the action of the Corporation Commission as *prima facie* correct. Const. § 156, cl. 'f.'"

We have quoted at length from the foregoing decisions where orders of commissions were reviewed, where it was provided by law that such order is to be regarded *prima facie* correct, just, or reasonable. And it would not· be amiss further to see how the term *"prima facie"* has been regarded when applied to· evidence in the trial of a case.

In the case of *Boykin v. State,* 34 Ark. 445, Mr. Justice Eakin, in delivering the opinion of the court, said: ·

"Possession of property recently stolen, without reasonable explanation of that possession, is evidence of guilt to go to the jury for their consideration. In this sense, it is *prima facie* evidence, but not in the sense that it is such evidence as must compel the jury to a conviction, unless it be rebutted. ·It would have been better to have modified the instruction complained ,of, so as to impress upon the jury the idea that the evidence went to them for their consideration, under all the circumstances, to be weighed as tending to show guilt, but not imperatively imposing upon the jury the duty of conviction, unless rebutted."

In the case of *Union Central Life Insurance Co. v. Caldwell,* 68 Ark. 519, 58 S. W. 359, Mr. Justice Wood, in delivering the opinion of the court, said: ·

"Proof of the giving of a promissory note by one person to another, without anything else appearing, is *prima facie* evidence of an accounting and settlement of all demands between the parties, and that the maker at the date of the note was indebted to the payee upon such settlement to the amount of such note; but this is a mere presumption, which may be repelled by proofs of the

consideration of such note, and the occasion for and circumstances. attending the giving of same."

In the connection that the term *"prima facie"* is used in section 22, art. 9, *supra,* it is not contemplated that any additional evidence should be considered by the Supreme Court on review, unless within the discretion of said court the cause should be remanded for further investigation. If no additional testimony is to be considered on appeal in the Supreme Court, reviewing the same in the same capacity as a legislative body, as held by the Supreme Court of the United States in the case of *Prentis et al. v. Atlantic Coast Line Co. et al., supra,* what is the effect of being "regarded as *prima facie* just, reasonable, and correct?" It simply means that, in considering the testimony and the record upon which the order was based, the presumption arises in the Supreme Court that the order thereon made is to be regarded as *prima facie* just, reasonable, and correct, such presumption subject to be overcome by evidence that may be in the record that clearly rebuts same.

Such presumption arising in favor of the order, while a strong one, is not one of a conclusive character. It will give way to a fair exhibition of the contravailing evidence in the record. The presumption given by this provision in favor of the Commission's order belongs to that class of *prima facie* orders or presumptions that are rebuttable, and will yield to the legitimate recitals of the record or the probative force of the evidence in the record. It casts upon the appellant the burden of making it clearly appear to the reviewing body that the order made by the Commission is erroneous. The appellant cannot with hope of success ask the revising tribunal to overthrow the findings of the Commission upon vague inferences or remote possibilities. It will fail unless it overcomes the presumption by making error manifest. Elliott's Appellate Procedure, § 711.

The only question in this record as to telephone facilities to be furnished by the railroad company pertains to such as are necessary to a proper discharge of its duties as a common carrier. It is

not necessary to determine the distinction between the acts of a public service corporation when acting in its public capacity and when in its private capacity, for the acts complained of upon which this order is based relate solely to that of a public service corporation in its public capacity.

The evidence in the record neither rebuts nor overcomes the presumption in favor of the justness, reasonableness, and correctness of the Commission's order. In fact, the great weight of it sustains it. The order of the Commission is accordingly affirmed.

All the Justices concur.