## Chicago, R. I. & P. Ry. Co. *et al.* v. State *et al.*

### No. 670.   Opinion Filed July 13, 1909.

(103 Pac. 617.)

1. **CORPORATION COMMISSION — Review—Record — Findings — Presumption of Correctness.** "All the facts upon which the action appealed from was based, and which may be essential for the proper decision of the appeal" (section 22, art. 9, Const. [Bunn's Ed. sec. 234; Snyder's Ed. p. 259]) means the facts as found by the commission, and does not include the evidence introduced at the hearing.

1a. Facts found by the commission are **prima facie** correct, and can be overturned only under the rule announced in the cases of **Atchison, Topeka & Santa Fe Ry. Co. v. State et al., 23 Okla. 210, 100 Pac. 11,** and **Atchison, Topeka & Santa Fe Ry. Co. v. State et al., 23 Okla. 510, 101 Pac. 262.**

2. **RAILROADS—Telegraphs and Telephones—Corporation Commission—Orders—Setting Aside—Maintenance of Operator at Station.** The order of the commission, being made upon the facts found, is presumed to be just and reasonable; but, when such order, applied to the facts found, cannot be sustained on examination in this court, as being just and reasonable, same may be set aside.

2a. When it is conceded, for the purpose of the order, that the receipts from the commercial telegraph service are inadequate for the maintenance of an operator at a station, and there is no finding of facts as to the commercial telegraph receipts at said station during the maintenance of an operator there (it appearing that up to less than or about a year prior to the date of the hearing such an operator had been maintained), the order of the commission directing the telegraph company to install and maintain an operator at said station for commercial purposes is not reasonable and just.

2b. A railway company cannot be reasonably and justly required to install and maintain a telegraph operator at such station, unless it is reasonably necessary on account (1) of the safety and the expedition of the train services, both freight and passenger, or either; and (2) of the convenience to be afforded to the public by the railway company in the conduct of its freight and passenger service, or either.

2c. When there is no finding of facts as to the amount of freight receipts at said station, showing what portion thereof goes to lines other than the appellant company, nor as to the

passenger receipts, showing also what portion thereof goes to lines other than said appellant, there being a finding, however, that said appellant had been compelled "to phone to other stations for the purpose of securing orders for trains tied up for want of orders" at said station, neither stating how many times, nor whether or not the telephone service was adequate to supply that demand, or the expenses entailed thereby, **held,** that under such finding such order against the railway company would not be justified.

3. **CORPORATION COMMISSION—Orders—Presumption of Correctness.** The prima facie presumption of correctness (section 22, art. 9, supra) applies to the facts found, and when there is no finding by the commission on a necessary point, and the evidence in the record is indefinite and unsatisfactory, on review there such order will not be sustained.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

Proceedings before the State Corporation Commission by the State of Oklahoma and others to compel the Chicago, Rock Island & Pacific Railway Company and the Western Union Telegraph Company to install telegraph service, for commercial and other purposes for which commonly used, at the town of Ferguson. It was so ordered, and the railway company and telegraph company appeal. Reversed and remanded.

*Cottingham & Bledsoe* and *C. O. Blake,* for appellants, citing: *W. U. Tel. Co. v. Railroad Com.* (Miss.) 21 South. 15; *Railway Co. v. Becker et al.,* 35 Fed. 883; *Reagan v. Loan & T. Co.,* 154 U. S. 399; *Railroad Com. Cases,* 116 U. S. 307; *Atlantic Coast Line v. N. Car. Corp. Com.,* 206 U. S. 20; *Platt v. Lecocq,* 158 Fed. 723; *A., T. & S. F. Ry. Co. v. State,* 23 Okla. 231.

*Charles West,* Atty. Gen., and *Geo. A. Henshaw,* Asst. Atty. Gen., for appellees, citing: *Railway Co. v. State,* 23 Okla. 210; *Railroad Co. v. Interstate R. Co.,* 107 Va. 229; *Railroad Co. v. Casey,* 26 Pa. 300; *Interstate Commerce Com. v. Railway Co.,* 209 U. S. 119; *Reagan v. Loan & T. Co.,* 154 U. S. 397; *Railroad Co. v. Gill,* 156 U. S. 194; *Railway Co. v. Interstate Commerce Com.* 206 U. S. 441; *Steenerson v. Railroad Co.,* 69 Minn. 353; *Smith v. Ames,* 169 U. S. 549.

WILLIAMS, J.   In the case of *Western Union Tel. Co. v. Mississippi Railroad Commission*, 74 Miss. 80, 21 South. 15, the third plea averred that:

"Its lines were constructed and, maintained, and its business carried on, in Mississippi at a very great expense, while the receipts from its business were small and unremunerative; that a large majority of its offices in the state are maintained under agreement with the various railroad companies, whereby the railroad companies maintain the offices and pay the operators, and but for this arrangement it would be unable to maintain its business in the state; that, notwithstanding said contracts, and its earnest efforts to economize in every way consistent with efficient public service for some time prior to the closing of said office, defendant was doing business in the state at a loss, owing to competition with other lines, and owing to the tariff established by the Railroad Commission, and from other causes; that at Fayette it had no arrangements with the railroad company, and could make none; and that the receipts of that office, at the time it was closed, were insufficient to pay the expenses of keeping it open for business, and, if it was maintained, it would be at a loss to defendant, without its fault, and it could be maintained only at a loss to defendant in the expenditure of money and the consumption of its property, for which it could get no return.   Wherefore to require it to reopen the office would be violative of the Constitution of Mississippi, in that it would be taking private property for public use without due compensation."

The fourth plea averred, in addition to the foregoing allegations of the third plea, that "to require defendant to further keep open and maintain said office would be to deprive it of its property without process of law, and violative of section 1 of the fourteenth amendment of the Constitution of the United States." A general demurrer was interposed to each of said pleas, and the court sustained the same.   The Supreme Court of Mississippi in that case held that facts set up by said pleas, and admitted to be true by the demurrer, furnished ample justification for the actions of the telegraph company in closing its office at Fayette.

In the case of *Chicago, St. Paul, Minneapolis & O. Ry. Co. v. Becker et al.* (C. C.) 35 Fed. 886, Mr. Justice Brewer, sitting as circuit judge, in delivering the opinion of the court, said:

"It is not within the power of the state, directly or indirectly, to put in force a schedule of rates, when the rates prescribed therein will not pay the cost of service. In this case the defendant took no testimony, and the complainant's testimony shows that the actual cost of the service—that is, wages of employees, rent of engines, keeping the track in repair—exceeds per car by 14 cents the amount allowed in the schedule as compensation. In other words, it costs the complainant $1.14 per car to do the work, and the defendant proposes to allow it to charge only $1. 'The state cannot require a railroad corporation to carry persons or property without reward.' *Railroad Commission Cases,* 116 U. S. 331, 6 Sup. Ct. 334, 29 L. Ed. 636."

In the case of *Atlanta Coast Line v. North Carolina Corporation Commission,* 206 U. S. 20, 27 Sup. Ct. 585, 51 L. Ed. 933, the court of ultimate resort in this republic said:

"As the public power to regulate railways and private right of ownership of such property co-exist, and do not the one destroy the other, it has been settled that the right of ownership of railway property, like other property rights, finds protection in constitutional guaranties, and therefore wherever the power of regulation is exerted in such an arbitrary and unreasonable way as to cause it to be in effect not a regulation, but an infringement upon this right of ownership, such an exertion of power is void because repugnant to the due process and equal protection clauses of the fourteenth amendment."

In the light of the foregoing excerpts as authority, we now pass to the question as to whether or not the order made by the commission in this record is reasonable and just. The order recites:

" * * * The commission finds that the defendants maintain a station at the town of Ferguson, and keep an agent there, who performs all the duties of a regular agent other than telegraph service. The commission further finds from the evidence that shippers and buyers of grain and cotton are greatly discommoded and at many times sustain loss by reason of the failure of this service and that the defendant railroad has been compelled to phone to other stations for the purpose of securing orders for trains tied up for want of orders at the town of Ferguson. It is further shown by the evidence that considerable business in the shipment of various farm products is done at the town of Fer-

guson, and that the reasonable necessity of the public requires telegraphic service. The defendant railroad company contends that Ferguson as a commercial telegraph station does not pay a sufficient amount to enable it to maintain a telegraph office; that the defendant telegraph company is willing to maintain telegraph service at any station where the railway company maintains an operator who is telegrapher. Conceding the contention of the defendant railway company that receipts from commercial services are inadequate to pay for the maintenance of an agent, it must be remembered that there are but few stations in the state of Oklahoma where this service alone pays sufficient to maintain an agent, yet telegraph service is maintained throughout the state by the joint use of the railroad operator, and the commission is of the opinion that it is the duty of the defendant to maintain this service, inasmuch as the people of the town of Ferguson and vicinity have no means of ascertaining the arrival or departure of passenger trains, which is required by the order of this commission at stations where tickets are sold. It is therefore ordered by the commission that the defendants, the Western Union Telegraph Company and the Chicago, Rock Island & Pacific Railway Company, install and maintain telegraph service for commercial and other purposes for which such service is commonly used, and maintain the same until further ordered by this commission. That this service shall be maintained on and after the 15th day of September, 1908."

Section 22, art. 9 (Bunn's Ed. § 234; Snyder's Ed. p. 259) of the Constitution, in part provides:

" * * * The chairman of the commission, under the seal of the commission, shall certify to the Supreme Court all the facts upon which the action appealed from was based and which may be essential for the proper decision of the appeal, together with such of the evidence introduced before, or considered by the commission as may be selected, specified and required to be certified, by any party in interest, as well as such other evidence, so introduced or considered as the commission may deem proper to certify. The commission shall, whenever an appeal is taken therefrom, file with the record of the case, and as a part thereof, a written statement of the reasons upon which the action appealed from was based and such statement shall be read and considered by the Supreme Court, upon disposing of the appeal."

"All the facts upon which the action appealed from was

based and which may be essential for the proper decision of the appeal" evidently means and contemplates the facts as found by the commission, and not the evidence introduced at the hearing. For if any other construction was intended, why the use of the subsequent clause, "together with such of the evidence before, or considered by the commission as may be selected, specified and required to be certified by any party in interest, as well as such other evidence, so introduced or considered as the commission may deem proper to certify" Now "all the facts upon which the action appealed from was based and which may be essential for the proper decision of the appeal" are presumed to be correct. In the case of *Atchison, Topeka & Santa Fe Ry. Co. v. State et al.,* 23 Okla. 210, 100 Pac. 11, it was held by this court that the finding of the commission on appeal, under the *prima facie* presumption as provided in section 22 art. 9 (Bunn's Ed. § 235; Snyder's Ed. p. 160), is presumed to be correct until overcome or rebutted by the facts in the record, as weighed and found by this court on reviewing the same. In the case of *Atchison, Topeka & Santa Fe Ry. Co. v. State et al.,* 23 Okla. 510, 101 Pac. 267, this court quoted with approval from the case of *Atchison, Topeka & Santa Fe Ry. Co. v. State et al.,* 23 Okla. 210, 100 Pac. 11, *supra,* the following excerpt:

"The presumption given by this provision in favor of the commission's order belongs to that class of *prima facie* orders or presumptions that are rebuttable, and will yield to the legitimate recitals of the record, or the probative force of the evidence in the record. It casts upon the appellant the burden of making it clearly appear to the reviewing body that the order made by the commission is erroneous. The appellant cannot with hope of success ask the revising tribunal to overthrow the findings of the commission upon vague inferences or remote possibilities. It will fail unless it overcomes the presumption by making error manifest."

It necessarily follows that the facts as found by the commission are *prima facie* correct, and can be overturned only under the rule announced by the foregoing cases.

But the question further arises as whether or not the facts

found by the commission will justify the order made. The commission found "that the defendants maintain a station at the town of Ferguson, and keep an agent there, who performs all the duties of a regular agent other than telegraph service." Further, "that shippers and buyers of grain and cotton are greatly discommoded and at many times sustain loss by reason of the failure of this service, and that the defendant railroad has been compelled to phone to other stations for the purpose of securing orders: for trains tied up for want of orders at the town of Ferguson. It is further shown by the evidence that considerable business in the shipment of various farm products is done at the town of Ferguson, and that the reasonable necessity of the public required telegraphic service." In the order it is conceded, for the purpose of that case, that the receipts from commercial telegraph service are inadequate to pay for the maintenance of an operator at said station, and it naturally follows under its recitals that the commission would not be justifiable in ordering the telegraph company to install and maintain a telegraph operator at said station solely for commercial purposes. Finding of facts, reciting that "the defendants maintain a station at the town of Ferguson, and keep an agent there, who performs all the duties of a regular agent other than telegraph service," is not sustained by the evidence, except as to the Chicago, Rock Island & Pacific Railway Company; there being not one scintilla of evidence in the record that the telegraph company in any way maintains and keeps "an agent there who performs all the duties of a regular agent other than telegraph service."

Now as to whether or not, upon the facts found by the commission, it was justifiable in requiring the appellants to install and maintain a telegraph operator at said station on account of the railway business. It appears, at all events, that the order would not be justifiable against the telegraph company for such purposes unless it could be sustained as against the railway company, and our attention is now directed to that phase of the case. The fact that shippers and buyers of grain and cotton are discom-

moded, and at many times sustain loss, by reason of the lack of telegraphic service, is not sufficient to require the railway company to install and maintain a telegraph operator at said station, unless it is reasonably necessary on account:   (1) Of safety and expedition in the train service, both freight and passenger, or either; and (2) the convenience to be afforded to the public by the public service company in the conduct of its freight and passenger service, or either.   But there is no finding of fact as to the amount of the freight receipts at said station, showing what portion thereof would go to lines other than the appellant company, nor as to the passenger receipts likewise showing what portion thereof goes to lines other than said appellant.   It may be insisted by the appellees that there is evidence in the record to the effect that the average aggregate freight and passenger receipts at said station for 12 months prior to the date of the hearing was $242 per month; but there is no testimony showing what part is for freight or passenger service, and what portion thereof the appellant company was entitled to.   The *prima facie* presumption of correctness, by virtue of section 22, art. 9, *supra,* applies only to the facts found; and, there being no finding by the commission on this point, and the evidence in the record being so indefinite and unsatisfactory, even if we were permitted to go outside of the facts found by the commission (which it is not necessary to determine here), we do not feel that we would be justifiable in holding, incomplete and unsatisfactory as the evidence is, that it would be just and reasonable to require the railway company to install and maintain the telegraphic service at said station.   For it would not be just and reasonable to require said company to install and maintain such service, as a rule, at a loss, unless in exceptional cases, like when the safety in the operation of the train service, or extraordinary public necessities, would demand it.

The patronizing public, as a rule, have no right to demand conveniences, without just compensation to the party furnishing the same.   Neither an individual nor a corporation, as a rule,

can be required to furnish conveniences without just compensation, or at a loss to itself. But, when, in the operation of train service, safety to human life reasonably requires it, then the police power will intervene, and require it at all hazards. But there is no finding of fact that would justify it under the safety proposition. The only finding that relates to that point is that "the defendant railroad company has been compelled to phone to other stations for the purpose of securing orders for trains tied up for want of orders at the town of Ferguson.", Such a finding is too indefinite. It does not state how many trains, nor negative the fact as to whether or not the telephone service was adequate to supply that demand, or less expensive. Under a former decision of this court (*A., T. & S. F. Ry. Co. v. State et al.*, 23 Okla. 210, 100 Pac. 11), it was held that it was reasonable and just to require a telephone to be maintained in stations where there are local exchanges, for the convenience of the patrons of the station, under a proper case; and this telephone seems to have afforded relief when the trains were tied up for want of orders. The statement of the commission that "it is further shown by the evidence that considerable business in the shipment of various farm products is done at the town of Ferguson, and that the reasonable necessity of the public requires telegraphic service," is merely the recital of a conclusion, at least too general, and not sufficiently specific.

If the patrons of that station are reasonably and justly entitled to this telegraph service, they ought to have it. If it would be unjust and unreasonable to require the appellants to install and maintain an operator at said place, they ought not to be so required to do. We are sitting in this case as a legislative body, and in that capacity we apply the law to the facts. *A., T. & S. F. Ry. Co. v. State et al.*, 23 Okla. 510, 101 Pac. 263. Public service corporations, under the Constitution of this state, as well as the Constitution of the United States, are not required, as a rule to furnish conveniences at a loss, unless safety to human life, or exceptional exigency, requires it. As said by the Supreme Court of the United States, in the case of *Reagan v. Farmers' Loan &*

*Trust Co.* (Texas Railroad Commission Case) 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014:

"The equal protection of the law which, by the fourteenth amendment, no state can deny to the individual forbids legislation, in whatever form it may be enacted, by which the property of one individual is, without compensation, wrested from him for the benefit of another, or for the public. This, as has been often observed, is a government of law, and not a government of men, and it must never be forgotten that under such a government, with its constitutional limitations and guaranties, the forms of law and the machinery of government, with all their reach and power, must, in their actual workings, stop on the hither side of the unnecessary and uncompensated taking or destruction of any private property, legally acquired and legally held."

If certain service is to be required at stations where the receipts will not justify it, and where the safety of human life does not require it, it can only be done at a loss to the public service corporation, unless the burdens be imposed upon the receipts at other stations to bear the deficits at such stations, and under said rule there would be no line of demarcation or limitation, and every station or switch or side track within the confines of this state would be entitled to such conveniences, regardless of receipts; the burden being placed upon stations where the receipts would permit it to bear such deficits. Under such a policy 2-cent fares would be jeopardized; cheap or reduced freight rates rendered improbable.

Again, where the receipts at such stations will not justify the installing of such service, there being eliminated the question of the safety or expedition in the operation of trains, it would be unreasonable to require such service to be installed creating a deficit at such station to be borne by the receipts at a larger station, except in exceptional instances. The patrons of a large station, after the expenditures for the reasonable maintenance of the station and a proper contribution toward the maintenance, equipment, and operation of the line, and the paying of a reasonable dividend on the investment are entitled, if it be reasonably practicable, to a reduction in rates; and, except as stated, it is un-

reasonable and unjust to require the large stations to contribute to pay deficits at small stations. If a sufficient number of persons take passage at a station during the year, so that the passenger receipts will justify the additional expenditure of having a telegraph office installed for the bulletining of trains, and such is reasonably necessary, it would then be reasonable and just to so require it. If the freight receipts at such office are sufficiently large to pay for the maintenance of the station and its agent, and contribute a reasonable *pro rata* towards the maintenance and operation of the line, and in addition thereto to pay the additional expense, either solely or in connection with the passenger receipts, to install and maintain a telegraph office for the convenience of the patrons of said station, when reasonably necessary, it would be reasonable and just, otherwise not.

It is insisted by the appellees that, although for the purpose of this case it is conceded that the commercial telegraph receipts at said station prior to the time the operator was discontinued were not sufficient to justify the maintenance of a telegraph office there for such purpose, there is no proof in the record showing what the receipts were. But it appears that a letter to the commission, or to the complaining party, from the telegraph company was introduced over the objection of the appellants, and it is recited therein as to what the receipts were prior to the discontinuance of said telegraph operator, and that for five or six months prior thereto they have ranged less than $2 per month. Whilst this would have been incompetent on the part of the appellants, yet when introduced by the appellees it may be considered. The evidence of the superintendent of the railway company that he had a letter from the telegraph company showing what the receipts were for a certain time prior to the discontinuance of the office was incompetent. The proper custodian of the records of the telegraph company might testify therefrom as to what the receipts were, but when testified to by some other party on a statement from said custodian it was hearsay. The statement of facts in this case should show what the freight receipts at said station were per month for a reasonable length of time preceding the

date of this hearing, and the character of the freight, and the amount of such receipts that was retained by the appellant railway company, and the amount that went to other lines, where the haul was over different lines; also what the passenger receipts were at said office, the amount retained by said appellant, and the amount going to other lines, where the travel was over different lines by means of through tickets. And where the complaint for the installing of an operator is on the ground that the safety and expedition of the train service requires it, the facts found should show the length of the division of the dispatcher and the location of his office, the number of operators used on said division, and, as far as practicable, the number of trains run per day, each way, and all other germane facts, in order that a proper predicate might be laid to determine whether or not it is reasonable and just and necessary to require an operator to be installed and maintained at said station.

We feel that on the facts found it would not be just and reasonable to require an operator to be installed and maintained at said station. The order of the commission as to each appellant is accordingly reversed and remanded.

All the Justices concur.