## KANSAS CITY SOUTHERN RY. CO. v. STATE *et al.*

### No. 1978.    Opinion Filed January 10, 1911.

**RAILROADS—Telegraph Service—Corporation Commission—Orders—Reasonableness.** An order of the Corporation Commission requiring a railroad company to install telegraph service at one of its stations for the sole purpose of bulletining its passenger trains, made without any finding of facts or evidence as to the extent of the freight or passenger traffic, or either, at said station, or the amount or the approximate amount of the receipts therefrom, held error, where it is shown that such additional service would increase the expenses of the company for maintenance of the station more than 100 per cent.

(Syllabus by the Court.)

*Appeal from Corporation Commission.*

The Kansas City Southern Railway Company was ordered by the Corporation Commission to install telegraph service at the town of Gans, and appealed.    Reversed.

*Cottingham & Bledsoe,* for appellant.

*Charles West,* Attorney General, (*C. J. Davenport,* of counsel) for appellees.

TURNER, J.    This appeal is from an order of the Corporation Commission that· appellant "maintain a telegraph operator at its station at Gans for the purpose of bulletining its trains and performing all other duties usually performed by telegraph operators and station agents in the conduct of its business as a transportation company."

In *C., R. I. & P. Ry. Co. v. State,* 24 Okla. 370, 103 Pac. 617, and *St. L. & S. F. R. Co. v. Newell,* 25 Okla. 502, 106 Pac. 818, we held, in effect, that a railway company cannot be reasonably and justly required to install and maintain a telegraph operator at one of its stations unless it appears that the safety and expedition of the train service, both freight and passenger, or either, require it, or that the convenience to be afforded to the public by the railway company in the conduct of its freight and

passenger service, or either, demands it. As a test to ascertain whether such an order is reasonable and just, in the former case we said:

"If a sufficient number of persons take passage at a station during the year, so that the passenger receipts will justify the additional expenditure of having a telegraph office installed for the bulletining of trains, and such is reasonably necessary, it would then be reasonable and just to so require it. If the freight receipts at such office are sufficiently large to pay for the maintenance of the station and its agent, and contribute a reasonable *pro rata* towards the maintenance and operation of the line, and in addition thereto to pay the additional expense, either solely or in connection with the passenger receipts, to install and maintain a telegraph office for the convenience of the patrons of said station, when reasonably necessary, it would be reasonable and just, otherwise not."

The facts found by the commission upon which this order is based were derived solely from the testimony of V. H. Tony, on behalf of petitioners, and C. C. Riley, appellants' superintendent of transportation, and are:

"The commission finds from the evidence that the town of Gans has between three and four hundred people; one cotton gin in operation and one in course of construction; that Gans is about seven miles north of Redland and eight miles south of Sallisaw in Haskell county, which are the nearest telegraph stations. During the months of January and February there were twenty cars of freight shipped in and out of the station at Gans, besides the local shipments. This appears to be substantially all the evidence upon this point.

"The superintendent of transportation testified that the commercial telegeraph service amounted to about 50 cents per month. The telegraph office was open during the cotton season and closed when business dropped off.

"It further appears from the evidence of the superintendent that it would cost about $27 per month additional to maintain an operator to perform telegraph sevice. The superintendent did not testify as to the freight and passenger receipts of this office, although this is usually a part of the defense in every case where the receipts of the office do not justify the maintenance of an

agent, and this information is in the possession of the defendant, and is a matter of defense. If the business of the office for two months, as testified to by the witness, is correct, there would be 120 cars of freight shipped in and out during the year, besides the local freight, passenger and express business.

"The commission finds from the evidence that the arrival of trains at this station are not bulletined and cannot be bulletined without the maintenance of a telegraph operator. The commission further finds from the evidence that reasonable service cannot be rendered the people at Gans and vicinity without the maintenance of a telegraph operator in the conduct of its business."

Applying the test to the facts thus found, it is obvious that the same were insufficient to support the order, in that no attempt is made to find the extent of the passenger traffic from that office in order to show that the passenger receipts therefrom would justify the additional expense of having a telegraph office installed there for the bulletining of trains; neither were the freight receipts at such office attempted to be found in order to show the same to be sufficient to pay for the maintenance of the station and its agent and contribute a reasonable *pro rata* towards the maintenance and operation of the line and the additional expense, alone or in connection with the passenger receipts, to install and maintain the office for the convenience of the patrons of that station. In the absence of such facts, the facts found by the commission are insufficient to support the order, and, hence, the attendant presumption that the same is just and reasonable is overcome and the order must fall; that is, unless sufficient material facts lacking in the findings of the commission may be found by us in the evidence to supplement said findings and maintain said presumption. And such we fail to find. The sole additional facts disclosed by the evidence are that, in the opinion of the witness Tony, appellant maintained a telegraph office at Gans when there was not more than one-third of the business done there that was done when the same was discontinued, at which time there were eight stores, some carrying a stock of $10,000, and business done there to the extent of some $50,000, to $100,-

000, per year; that from one to two cars of timber go out of Gans every day; that the telephone service was so bad that persons desiring to telephone were required to go to Sallisaw; that appellant maintained an agent at Gans and a bulletin board in the depot, but did not bulletin trains; that traveling men had been known to fail to make the town because of their inability to learn when they could get in and out; that the country tributary was agricultural, where cotton, beans, potatoes, radishes, corn, hogs, etc., are raised and shipped; that there is an express office there with the railroad agent as express agent, and who was a telegraph operator; that telegraph service was a necessity, and the lack of it a great injury and inconvenience to the people, and that Gans was the only town of its size on appellant's line of road in the state without such service. It was further disclosed that appellant's road is a freight and not a passenger road; that its trains run on slow schedule and are on time more than ninety-five per cent. of the time; that some inconvenience, but no disadvantage, in point of promptness accrued to Gans in not having telegraph service, so far as getting cars for shipment of freight was concerned; that appellant had maintained a telegraph office there up to May 8, 1908, when it was closed, and opened the latter part of October, and then closed again about the last of February prior to the filing of the complaint before the commission in April, 1909; that its average earnings from May until it was closed was $1.04 a month; that it was discontinued because business got poor and the same was not needed in the operation of trains; that appellant paid its agent at Gans $20 a month, who, in addition, received a commission from the express company on all ticket sales; that an agent and operator there would cost $47 a month, who, besides receiving those commissions, would get a commission on the telegraph business handled there. It is evident that these facts, taken with those found as stated, the question of safety and expediency in the operation of trains being eliminated, as it is, are insufficient to justify the order complained of. and that the

same falls directly within the rule laid down in the syllabus in the Newell case:

"An order of the Corporation Commission, requiring a railroad company to install telegraph service at one of its stations for the sole purpose of bulletining its passenger trains, made without any findings of fact or evidence as to the extent of the passenger traffic at said station, or the amount or approximate amount of the receipts therefrom, *held* error, where it was shown that such additional service would require an increase in the expenses of the company for maintenance of the station of from 75 to 100 per cent."

And, being for like reason unjust and unreasonable, said order is reversed.

DUNN, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., not participating.