ATCHISON, T. & S. F. RY. CO. v. STATE *et al.*

No. 444.  Opinion Filed March 30, 1909.

(101 Pac. 262.)

1.   **RAILROADS—Flag Stations—Authority of Corporation Commission.** Under section 18, art. 9 (Bunn's Ed. sec. 222) Const., the Corporation Commission has the authority to require a transportation company to establish and maintain a flag station in the performance of its duties as a common carrier

2.   **SAME—Review by Supreme Court.** The Supreme Court of the state of Oklahoma in reviewing an order of the Corporation Commission requiring a transportation company to establish and maintain a flag station, from which an appeal has been taken, acts in a legislative capacity.

2a.   In reviewing such order, this court determines whether or not the findings of the commission are correct and the order based thereon is reasonable and just, supported by the **prima facie** presumption in favor of the same.

2b. In determining whether or not the order is reasonable and just, this court is not restricted to the rule that the regulation or order complained of is a taking of property without due process of law.

3. **SAME.** When the evidence in the record, considered in connection with the prima facie presumption that the finding of the commission is correct and the order made thereon is just and reasonable, fails to rebut and overcome the proof and presumption in favor of such order, the same will not be disturbed on review in this court.

(Syllabus by the Court.)

*Appeal from the Corporation Commission of the State of Oklahoma.*

Proceedings by the State and others against the Atchison, Topeka & Santa Fe Railway Company for the erection and maintenance of a side track and flag station. From an order granting the petition, the railroad company appeals. Affirmed.

On the 29th day of May, A. D. 1908, a petition was filed with the Corporation Commission, asking that the appellant be required to erect and maintain a side tract or switch and flag station at the town of Civit, in the county of Garvin, and for such other and further order as the commission should deem necessary and just. The appellant, after due notice, answered. Witnesses on the part of appellees testified, in effect, that Civit is a town 7½ miles from Pauls Valley, about midway between Iroquois and Boudinot; that both of said towns are inaccessible; that as to Iroquois it is in a mountanous or hilly country, and, on account of washouts, same cannot be reached in any reasonable degree by a conveyance; that it has no loading track, just a small passing track, and there are no houses or stores at said place; that such is the condition at Boudinot, with the exception that in addition to the passing track there is a section house, there being no loading facilities at either place except a stock pen at Boudinot, to which there are no tracks laid; that Civit is about 2½ miles south of Boudinot and 3½ miles north of Iroquois; that the town of Civit consists of a cotton gin, a general store, post office, drug store, a vacant store building, six residences, a schoolhouse, in

which is maintained a public school, the buildings all being small frame structures, with the exception of the store building, which is two stories high made of cement blocks, the upper story being used as a residence; that there are seven families in the town of Civit, and the total population is about 40 persons; that the townsite consists of 10 acres, but the greater portion of it is still covered with a growth of small trees, and has never been completely cleared; that during the past two years there have been ginned at Civit between 410 and 430 bales of cotton; that Civit is more accessible than either Iroquois or Boudinot, being located on the country road between Wynnewood and Byars; that, if a flag station was established and maintained there, business would be developed for the railroad at said point; that sand could be shipped profitably from that place to Pauls Valley, there being a good supply of sand of a high quality easily accessible to said place, and a demand for it at Pauls Valley; that the cotton seed product is hauled by dirt road to Wynnewood, and that cattle are driven to Wayne from that section of the country for shipment that otherwise would be shipped from Civit; that at Iroquois and Boudinot the hills and canon are on one side and the creek on the other, and from the creek it overflows, and neither place is desirable to establish a village or places for residences; that the roads are being constructed to Civit, and not to Boudinot or Iroquois; that the railroad has been in operation five or six years, and there never has been any disposition among the people to build up a town either at Boudinot or Iroquois; that Civit is located in a section of country between Pauls Valley and Byars that is thickly populated, and where roads are opened up from the standpoint of population and accessibility to the public, there being no other place between Pauls Valley and Byars that compares with Civit.

In addition thereto, J. M. Lee, the chief engineer for the Corporation Commission, testified that he had examined appellant's line between Pauls Valley and Byars, and that is was reasonably practicable to establish and maintain a flag station at Civit, and stated the facts on which he based his judgment. He testified as an expert of over 30 years' experience as an engineer.

The testimony of the witnesses on the part of the appellant on the main points at issue was contradictory to that on the part of the appellees.

On the 17th day of August, A. D. 1908, the commission entered its order in said cause, a portion of which is in words and figures as follows:

"* * * The commission finds from the evidence that about six years ago the defendant built this line of road from Pauls Valley to Shawnee, and that it established a station at the towns of Iroquois and Boudinot, and that Iroquois is about four or five miles from Pauls Valley, and that Boudinot is about the same distance from Byars. The evidence further showed that these switches and stations had been established for the period above mentioned and that no towns or depots have been established during all this time; that the same had been used very little, if any, by the shipping public; that Iroquois is located, near the Washita river and is a place from the evidence that will never be inhabited by people so as to make a town; and that it is in a very inaccessible place to reach by country roads. The evidence further showed that Civit was something near one-half way between Boudinot and Iroquois, and favorably located from a standpoint of convenience to the people and the making of a town. There is now located at said point a cotton gin and several families, and by the establishment of shipping facilities at this place the commission is of the opinion that the same will become an active shipping center for that community, and that Boudinot and Iroquois would probably never be used by the public for shipping purposes except in a very limited way. The defendant contends that it should not be required to establish shipping facilities at Civit because of the maximum grade of this road and of a curve. The evidence shows that Civit is located on a five-tenths of 1 per cent. grade, which, in the opinion of the commission, is not an excessive grade for the establishment of switching facilities and depot purposes, and that the curve is only a slight curve, and would in no way greatly impair the use of that location for a switch track and other shipping facilities. It is therefore ordered by the commission that the defendant, the Atchison, Topeka & Santa Fe Railway Company, build and operate a switch track at the town of Civit, and that it stop its passenger trains at Civit for the purpose of transacting such business as is usually done

by passenger trains, and that the town of Civit be made a prepay station for the shipment of freight, and that freight shall be received and loaded at said station in the usual manner as is done at all stations where an agent is not maintained : that said passenger trains shall stop on and after the 15th day of September, 1908, and that said switch shall be established and ready for use by October 1, 1908; and that the same shall be maintained until further ordered by the commission."

An appeal was duly prosecuted from said order, and it is now properly before this court for review; the appellant making the following assignments of error: (1) That the commission had no jurisdiction; (2) that the order is unreasonable and unjust, and imposes an unnecessary burden upon the appellant; (3) that the commission erred in its opinion that Iroquois is located near the Washita river and is a place which, from the evidence will never be inhabited by the people so as to make a town, and being inaccessible to reach by country roads, because such finding is largely speculative, in so far as it deals with the future, and in direct conflict with the evidence, in so far as it deals with the present; (4) that the commission erred in finding that Boudinot and Iroquois, being located in the Washita valley, are unfit places for residences, etc., because the same is not sustained by the evidence; (5) that the commission erred in requiring appellant to move and maintain its depots where good public roads are located, thereby holding that it was the duty of the appellant to remove its depot to the public roads rather than for the public to look after the construction of roads to its depots; (6) that the commission erred in holding that Civit is not on an excessive grade for the establishment of switching and depot facilities, and that the curve is only a slight curve same being in conflict with the evidence; (7) that the commission erred in directing appellant to build and operate a switch track at the town of Civit, said order being unreasonable, unnecessary, and practically impossible of performance, and imposes an unnecessary burden on appellant; (8) that the commission erred in ordering appellant to stop its passenger trains at Civit for the purpose of transacting such business as is usually done by passenger trains, said order

being unreasonable, unnecessary, and practically impossible of per-
formance and imposes an unnecessary burden on appellant; (9)
that the commission erred in ordering that Civit be made a pre-
pay station for the shipment of freight, etc.; (10) that the com-
mission erred in providing that passenger trains should stop at
said station on and after the 15th day of September, 1908, and
that a switch be established and ready for use by October 1, 1908,
said order being unreasonable and unjust.

*Cottingham & Bledsoe,* for appellant, cited: *Railroad Com-
m'rs v. Railway Co.* (Texas) 38 S. W. 751; *St. L. & I. M. Ry. Co.
v. Adcock* (Ark.) 12 S. W. 874; *Ohio & M. Ry. Co. v. People,*
120 Ill. 200; *State v. Yazoo & M. V. R. Co.* (Miss.) 40 South.
265; *State ex rel. v. Ry. Co.* (Minn.) 79 N. W. 510; *Ry. Co. v.
State,* 193 U. S. 53; *Railway Co. v. Duslan,* 142 U. S. 492.

*George A. Henshaw,* Asst. Atty. Gen., for appellees, cited:
*A., T. & S. F. Ry. Co. v. D. & N. R. Co.,* 110 U. S. 667; *Comm. v.
R. R. Co.,* 103 Mass. 254; *Railroad Comm's v. R. R. Co.,* 63 Me.
270; *State v. R. R. Co.,* 17 Neb. 647; *M. & St. L. R. Co. v.
State ex rel.,* 193 U. S. 52.

WILLIAMS, J. (after stating the facts as above). That a
flag station should be maintained at Civit, consisting of a spur
track at which passenger trains should be stopped for the putting
off and taking on of passengers and at which freight prepaid should
be received and delivered by appellant as at other stations where
agents are not maintained, is the matter complained of under
various assignments of error in this record. Said assignments may
properly be grouped under two heads, to wit: (1) As to the ju-
risdiction of the commission to make and enforce said order;
and (2) to determine the reasonableness and justness of the
same.

1. Section 18, art. 9 (Bunn's Ed. § 222) Const., provides:
"The commission shall have the power and authority and be
charged with the duty of supervising, regulating and controlling
all transportation and transmission companies doing business in
this state, in all matters relating to the performance of their pub-

lic duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements, the commission may, from time to time, alter or amend."

Under said section the commission had the authority to require the appellant to establish and maintain a flag station in the performance of its duties as a common carrier, when it was reasonably necessary and proper to establish and maintain such station.

2. The question is further raised: By what rule are we to determine the reasonableness and justness of the order? It is insisted by the appellees that an order of the commission is not unreasonable or unjust on an appeal here, unless it amounts to the taking of the appellant's property without due process of law. On the other hand, it is insisted that on an appeal from an order of the commission to this court the question is presented directly for review on the same record in the case, except when the court may deem it in the interest of justice to remand same for the taking of additional evidence, etc. (Section 22, art. 9, Const. [Bunn's Ed. § 234]), as to its reasonableness and justness, subject to the *prima facie* presumption in favor of the finding, evidenced by the order of the commission appealed from. Railroads in this state are expressly declared to be public highways. Const. art. 9, § 6 (Bunn's Ed. § 210). This is merely declaratory of a pre-existing and well-recognized rule (*Olcott v. Supervisors of Fon Du Lac,* 16 Wall. 678, 21 L. Ed. 382; *Beekman v. Saratoga & Schenactady R. Co.,* 3 Paige [N. Y.] 45, 22 Am. Dec. 679; *Bloodgood v. Mohawk & Hudson R. Co.,* 18 Wend. [N. Y.] 9, 31 Am. Dec. 313; *Worcester v. Railroad Co.,* 4 Metc. [Mass.] 564), and this whether the railroads are built, owned, and conducted by the state or private corporations, and whether exacting tolls

or free. When built, owned, and conducted by private corporations, they are subject to the use of the public only for a just compensation, but the public are entitled to reasonable use and service for such compensation without any discrimination. The railroads are to be held to a strict performance of the public duties enjoined upon them. To permit the officers of railroad companies to arbitrarily determine the time and places when and where corporations will receive and convey persons and articles on the line of its road, regardless of the convenience and reasonable requirements of the public, would be to give railroad corporations the power to control the markets of the country, to create a surplus or a famine in agriculture, mineral, or other products, and to promote or retard at pleasure the growth, prosperity, and welfare of towns, cities and countries.

Article 4565, Rev. St. Tex., provides:

"If any railroad company or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the commission, such dissatisfied company or party may file a petition setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge, classification or order, or to either or all of them, in a court of competent jurisdiction in Travis county, Texas, against said commission as defendant."

Article 4566 also provides :

"In all trials under the foregoing article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulation, order, classification, act or charges complained of are unreasonable and unjust to it or them."

In the case of *Railroad Commission of Texas v. Houston & Texas Central R. Co.*, 90 Tex. 340, 38 S. W. 755, it was contended on behalf of the commission that the courts had no power under said law to review the action of the Railroad Commission in regard to any of the matters enumerated, unless the complainant should show that the act complained of amounted to a taking of property without proper compensation or without due process of law, and, in support of this position, it was asserted that prior to

the enactment of said law the words "unreasonable and unjust," when used in reference to the action of legislative bodies and of commissions created by them, had received the interpretation that such acts must be unreasonable and unjust to the extent of being violative of the Constitution, and that the words "unreasonable" and "unjust" must be so construed, because it will be presumed that the Legislature used them in that sense. On page 353 of 90 Tex., on page 755 of 38 S. W., the court said:

"We know of no decision of any court which has defined either 'unreasonable' or 'unjust' to mean that the act so characterized is the taking of property without proper compensation or without due process of law. It is true that the courts have established a rule that the reasonableness and justice of rates fixed by the Legislature, or by a commission empowered by it so to do, are ordinarily questions committed to the discretion of those bodies, and not subject to revision by the courts; but in such cases the law did not authorize any revision of such action by the judicial department. It has been generally held, especially by the Supreme Court of the United States, that the action of the Legislature of a state or of a commission created by it, in fixing rates of transportation, would be revised, and would be set aside and annulled when it violates the constitutional rights of the carrier to that degree that it amounts to a taking of property without proper compensation, or without due process of law. But, in so doing, the courts have not revised the exercise of discretionary power on the part of the Legislature or the commission, but it is an interference on the part of the judiciary to protect parties against a violation of the Constitution of the United States or of the state, whether it be in making or enforcing the law. It has not been held that every rate, rule, or regulation which does not violate the Constitution is reasonable, but that extreme degree of unreasonableness which confiscates property gives jurisdiction to the court. If our statute has not changed the law, the same test must be applied in this case. The law of this state gives the right to any railroad company or person who may be interested to institute in any court of Travis county having jurisdiction of the subject-matter, a suit to test 'the decision of any rate, classification, rule, charge, order, act, or regulation adopted by the commission, such dissatisfied company or party to file a petition setting forth the particular causes of objection to such decision,'

etc. The test to be applied to every such decision is that it shall not be unreasonable or unjust to such railroad company or other person complaining. The great number of subjects to which this action may apply, and the fact that it may embrace all or any one of them, and may be instituted by any person interested for any cause which will show it to be unreasonable, manifests an intention on the part of the Legislature to establish a much more liberal rule than previously existed upon this subject. The decision made in establishing rates, classifications, rules, charges, orders, or other regulation might frequently be unreasonable and unjust, and yet might not amount to the taking of property without proper compensation, or without due process of law. Indeed, as to some persons who might be affected, and in the performance of some of the acts enumerated, the property would not be taken at all, and therefore the test which the attorney general would apply could not be applicable. For example, a shipper of cotton might institute just such a proceeding as this to set aside and annul these regulations, and yet in the regulation made his property would not be taken nor in any way appropriated, for he is not required to have his cotton compressed, nor to pay for it, unless he chooses to do so; but, in fact, his convenience and his substantial right of control of his property might be interfered with by this character of regulations to such an extent as to be unreasonable and unjust towards him without either taking his cotton or imposing any charge upon it. The language of the law is so antagonistic to the rule established by the decisions, which construction is claimed to have been adopted by the Legislature, that we must conclude that the Legislature intended to change those rules in their application to the subjects embraced in the articles quoted; otherwise, there was no need for the articles 4565 and 4566. Indeed, the conferring of that jurisdiction upon the courts of itself imposed the duty to try the case by the ordinary rule of procedure, unless otherwise provided."

The court further said:

" * * * In actions of this character, the courts will determine the question of the reasonableness and justice of any matter by the same rules as if it were an issue in other classes of suits, except as to the conclusive character of the evidence."

In the case of *Prentis et al. v. Atlantic Coast Line Co.*, 211 U. S. 210, 29 Sup. Ct. 67, the Supreme Court of the United States in construing a similar provision of the Constitution of

Virginia held that the Supreme Court of Appeals of Virginia in reviewing the action of the State Corporation Commission acted in a legislative capacity; that the judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts, and under laws supposed already to exist; that legislation, however, looks to the future and changes existing conditions by making new rules to be applied thereafter to all or some part of the subject about which it was legislating; that the establishment of a rate or requiring the establishment and maintenance of a depot or side track is the making of a rule for the future, and therefore legislative, and not judicial, in kind. The court said:

"And all that we have said would be equally true if an appeal had been taken to the Supreme Court of Appeals, and it had confirmed the rate. Its action in doing so would not have been judicial, although the questions debated by it might have been the same that might come before it as a court, and would have been discussed and passed upon by it in the same way that it would deal with them if they arose afterwards in a case properly so called."

The court further said:

"The state of Virginia has endeavored to impose the highest safeguards possible upon the exercise of the great power given to the State Corporation Commission, not only by the character of the members of that commission, but by making its decisions dependent upon the assent of the same historic body that is intrusted with the preservation of the most valued constitutional rights, if the railroads see fit to appeal. It seems to us only a just recognition of the solicitude with which their rights have been guarded that they should make sure that the *state in its final legislative action* [italics ours] would not respect what they think their rights to be before resorting to the courts of the United States. If the rate should be affirmed by the Supreme Court of Appeals and the railroads still should regard it as confiscatory, it will be understood from what we have said that they will be at liberty then to renew their application to the circuit court without fear of being met by a plea of *res judicata.* It will not be necessary to wait for a prosecution by the commission. We may add that, when the rate is fixed, a bill against the commission to restrain the members from enforcing it will not be bad as an at-

tempt to enjoin legislation or as a suit against a state, and will be the proper form of remedy."

It was the undoubted intention of the Constitution framers of Virginia, as well as those of Oklahoma, to doubly safeguard, not only the property rights of transportation and transmission companies, but also the rights of the public and the state. Section 20, art. 9 (Bunn's Ed. § 231) Const., provides that not only may an appeal be taken from an order of the commission by the corporation whose rates, charges, classifications of traffic, schedule, facilities, conveniences, or service are affected, but also by any person deeming himself aggrieved by such action, or, if allowed by act of the Legislature, by the state; it being clearly contemplated that, if it did not prove adequate in permitting any aggrieved party to appeal therefrom, the Legislature should extend the right to the state to intervene and appeal from such order. In reviewing the order appealed from on the record upon which it was considered, it is contemplated that in its legislative capacity this court would consider the matter *de novo,* except that the findings of the commission from which the appeal was taken should be regarded as *prima facie* correct, and that the order or legislative act made by the commission on such finding should also be presumed to be just and reasonable. It presupposes that the commission will have a hearing, that it will hear and weigh carefully the testimony introduced on the part of the citizen petitioning for relief, and at the same time will carefully hear and consider the testimony presented on the part of the transportation or transmission company against whom the complaint is made. It is further presumed that the commissioners shall be specially skilled in their line of work, and that they shall carefully and specially study the relation of transportation and transmission companies to the public, and the regulation, operation, maintenance, and control of the same, with a view, not only of reasonably protecting them in their investments in the state, but that they may also be required to give reasonable service, conveniences, facilities, and accommodations to the public without discrimination for a reasonable and just compensation. This is the presump-

tion unquestionably that moved the Constitution makers to declare the rule that the order appealed from should be regarded as *prima facie* just, reasonable, and correct.

This court, when reviewing an appeal from such an order, is not passing upon the question as to whether or not the order in effect confiscates the property of the appellant, or takes it without due process of law, except in a legislative capacity by virtue of section 22, art. 9, *supra,* in considering and determining the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal, supported by the *prima facie* presumption that such action of the commission shall be regarded as *prima facie* just, reasonable, and correct. However, should this court sit as a court judicially to determine whether or not a rate fixed by virtue of an act of the Legislature or of a commission created by law for such purpose should be set aside and annulled on the ground that it violates the constitutional rights of the carrier to that degree that it amounts to a taking of property without proper compensation, or without due process of law, a different rule would govern. In that case the judiciary in a judicial capacity would be sought to interfere to protect against a violation of the federal or state Constitution, and the rule in such a case would be that before the court would interfere it must clearly appear that the rate or act complained of was confiscatory. But in the exercise of its peculiar jurisdiction as a legislative body, in reviewing the action of the Corporation Commission, the duty of this court is marked out in the Constitution, and that is to determine whether or not such order appealed from was reasonable, just, and correct, supported by the *prima facie* presumption in favor of the action of the commission that it is reasonable and just.

In the case of *Atchison, Topeka & Santa Fe Ry. Co., Appellant, v. State of Oklahoma et al., Appellees* (No. 443, decided by this court on the 9th day of February, 1909) *ante,* p. 210, 100 Pac. 16, the court said:

" * * * What is the effect of being 'regarded as *prima facie* just, reasonable, and correct'? It simply means that in con-

sidering the testimony and the record upon which the order was based, the presumption arises in the Supreme Court that the order thereon made is to be regarded as *prima facie* just, reasonable, and correct, such presumption `subject to be overcome by evidence that may be in the record that clearly rebuts same. Such presumption arising in favor of the order, while a strong one, is not one of a conclusive character. It will give way to a fair exhibition of the contravailing evidence in the record. The presumption given by this provision in favor of the commisson's order belongs to that class of *prima facie* orders or presumptions that are rebuttable, and will yield to the legitimate recitals of the record or the probative force of the evidence in the record. · It casts upon the appellant the burden of making it clearly appear to the reviewing body that the order made by the commission is erroneous. The appellant cannot with hope of success ask the revising tribunal to overthrow the findings of the commission upon vague inferences or remote possibilities. It will fail unless it overcomes the presumption by making error manifest."

The foregoing rule is to govern this court in determining whether or not the order appealed from requiring the appellant to establish and maintain a flag station at Civit is just and reasonable. The evidence in the record on the part of the appellees sustains the reasonableness and justness of the order. True, on the part of the appellant it tends to support a contrary contention. But, when we consider the evidence in the record in connection with the *prima facie* presumption that the findings of the commission are correct and that the order made thereon is just and reasonable, we do not believe that we would be justifiable in concluding that the testimony in the record on the part of the appellant rebuts and overcomes the proof on the part of the appellees, and the presumption in their favor.

The order of the commission is accordingly affirmed.

All the Justices concur.