St. Louis & S. F. R. Co. v. Travelers' Corporation of Oklahoma.

and the same has not been preserved by bill of exceptions or other record so the new judge can review the grounds for new trial."

It is clear from the above citations that the motion in the instant case cannot partake of the nature of a motion for new trial, inasmuch as there is no issue of fact to be determined which would prevent the present judge of the trial court from yet passing upon the same or dismissing it for want of prosecution.

For the reasons stated, the appeal is hereby dismissed.

All the Justices concur.

---

ST. LOUIS & S. F. R. CO. v. TRAVELERS' CORPORA-TION OF OKLAHOMA et al.

No. 6616.    Opinion Filed February 16, 1915.

Rehearing Denied May 11, 1915.

(148 Pac. 166.)

1. CARRIERS—Regulations—Validity—Rules of Corporation Commission. Rules and regulations of a common carrier of persons, made for the conduct of its business, as authorized by section 811, Rev. Laws 1910, when inconsistent with the rules and regulations lawfully prescribed by the Corporation Commission, under section 18, art. 9, Constitution, are unlawful and void.

2. SAME—Order of Corporation Commission—Validity—Tickets. The order of the Corporation Commission directing that railroad companies shall desist from requiring passengers to show their tickets before entering cars, and which penalize all passengers that do not procure tickets, where sufficient opportunity is afforded, is not in conflict with section 812, Rev. Laws 1910, authorizing a common carrier to demand passenger fare either at starting or at any subsequent time.

3. SAME—Presumption on Appeal. On appeal from an order of the Corporation Commission, the presumption obtains, by reason of section 22, art. 9, of the Constitution, that the order is reason-

able, just, and correct, and the company which complains on appeal of such order has upon it the burden of establishing the unreasonableness, unjustness, or incorrectness of such order, which it may do by showing that the unreasonableness of the order appears affirmatively from the facts as certified by the commission, or that it is shown by evidence in the record, upon which the commission failed to make findings of fact, or upon which the commission erroneously found the facts.

(Syllabus by the Court.)

## *Appeal from Corporation Commission.*

Complaint filed by the Travelers' Corporation with the Corporation Commission against the St. Louis & San Francisco Railroad Company and others. From an order of the Commission, the Railroad Company named appeals. Affirmed.

*W. F. Evans* and *R. A. Kleinschmidt,* for appellant.

*S. P. Freeling,* Attorney General, and *J. H. Miley,* Assistant Attorney General, for appellees.

SHARP, J. On February 9, 1914, the Travelers' Corporation, an organization consisting of commercial travelers, filed a complaint with the Corporation Commission, in which it was charged that the appellant and 14 other railroad companies named, engaged in the transportation of persons and property at points within the state of Oklahoma, in the operation of their passenger trains opened only one exit on each of said trains, and required passengers to show their tickets before boarding trains, and complainant asked that a hearing and investigation of the charges be had, and that said railroad companies be required to open at least one exit to each coach in their passenger trains, and further that said companies be prohibited from requiring passengers to show their tickets before being permitted to board trains. On February 28th following, a hearing on said complaint was had, at which a number of witnesses were examined, both on behalf of the complainant and on behalf of the railroad companies. As a result thereof, the commission issued its

order No. 804, which, after reciting the issues and the reason upon which the commission's action was based reads:

"It is therefore ordered that the defendants herein shall desist from requiring passengers to show tickets before entering the cars and shall collect from all passengers who board cars at stations where tickets are on sale an additional one cent per mile fare. If the passenger so desires, he can pay the additional one cent on the train to the next station where tickets are sold where such train is scheduled to stop and shall there be given a reasonable opportunity to purchase a ticket, and if he fails to do so he shall be charged the additional cent per mile to destination. Where no reasonable opportunity is offered (that is, the agent not present before the train starts), the passenger shall be carried to destination at the regular rate. It is further ordered that placards shall be posted in all stations in a conspicuous place, stating, in substance, that all passengers boarding trains without tickets will be charged three or four cents a mile, as the case may be (that is, a road that is now charging three cents per mile shall charge passengers four cents per mile and a road that is now charging two cents a mile shall charge passengers three cents a mile). It is further ordered that the rear door of the smoking car and one door of each first-class car shall be opened for the egress and ingress of passengers, and the entrance of the car for colored passengers shall be opened (that is, the vestibule door of each coach shall be opened). The defendants shall not be required to keep a box or extra step for the smoking car door."

From the order the St. Louis & San Francisco Railroad Company alone has appealed to this court.

It will be noted that two separate, though somewhat related, abuses were sought to be corrected as a result of the hearing. With regard to the rule of the railroad companies requiring passengers to exhibit tickets before entering cars, it was found by the commission that its enforcement caused delay and inconvenience, though from said statement it appears that, in so far as the inconvenience

was concerned, it was due largely to the passengers not being accustomed to the requirements, though the rule was one in force in other places. It was further stated that one of the most serious objections to the rule's enforcement was that white passengers were required in many instances to show their tickets to negro train porters, and that such practice was liable to cause serious trouble at any time; in fact, there was evidence introduced to show that on some few occasions minor disturbances had already occurred on account of said practice. It was further found by the commission:

"It is the custom of some roads to open one door for both the first-class coach and the smoker, and in large cities it requires about five minutes for the passengers to unload and from three to four minutes to board the train. When the train arrives the passengers leave the waiting room regardless of the weather conditions and are often required to stand from three to five minutes in exceedingly cold or stormy weather and the rain. There is no real necessity for this regulation."

Besides the reasons given, there was evidence introduced which tended to warrant the action of the commission upon other grounds. On the other hand, there was a large volume of testimony of experienced and capable railroad officials and employees which tended strongly to support the practice of the railroad companies in each of the particulars complained of. From the testimony, and from what we know as a matter of common observation, the commission had before it a difficult and complex problem of passenger traffic. In the statement of the commission, it was announced that it had been and would continue to be its policy to require passengers taking transportation on trains within the state to buy tickets. Emphasis is laid upon the fact that, while the public expects the commission to secure the evidence to maintain the two-cent per mile rate, yet at the same time it is insisting upon the promulgation and enforcement of rules and regula-

tions whereby it is possible for 10 to 15 per cent. of the revenue never to be reported, and the plea is made that the public should co-operate with the commission, to the extent, at least, of buying tickets before entering trains. However, the judgment of the commission was that passengers who entered the cars at stations where tickets were on sale, but who neglected to purchase tickets, should be required to pay one cent a mile additional fare, though, if the passenger desired, he could pay the fare on to the next station where tickets were sold, where such train was scheduled to stop, and should there be given a reasonable opportunity to buy a ticket; but, if he failed so to do, then he should be charged with the additional fare to his destination.    A further provision was made that, if no reasonable opportunity was afforded for the purchase of a ticket before the train on which the passenger desired to embark was ready to start, then such passenger should be carried to destination at the regular fare.

It is insisted by the appellant that under section 811, Rev. Laws 1910, a common carrier of persons may make rules for the conduct of its business, and may require passengers to conform to them, if they are lawful, public, uniform in their application, and reasonable, and that its rules in the matter of requiring passengers to show tickets, and limiting the number of the points of entrance and exit to its cars, were of the character named, and that the enforcement thereof should not be interfered with, abrogated, or annulled by the commission.    It is true that under the fourth subdivision of section 18, art. 9, Constitution, the commission's authority to prescribe rules, regulations, or requirements for corporations and other persons, other than its authority to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, is subject to the superior authority of the Legislature to legislate thereon by gen-

eral laws. But we do not understand that the authority of a common carrier of persons to make rules for the conduct of its business, as provided by said section of the statute, takes from the commission (charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in the state, · in all matters relating to the performance of their public duties) its power and authority to make and adopt rules and regulations for the conduct of such business. In fact, it is specifically provided in subdivision 1 of section 18, art. 9, that the commission shall have the power and authority to prescribe and enforce rules and regulations, and that all rules and regulations adopted or acted upon by any transportation or transmission company, inconsistent with those prescribed by the commission, within the scope of its authority, shall be unlawful and void. It is doubtful if the section of the statute mentioned conferred upon the carrier any authority to make rules that did not theretofore exist at common law, for the principle that a common carrier of persons has the power to make and enforce reasonable rules and regulations for the carriage of its passengers, in the transaction of its business generally, is of wide if not universal application. 4 R. C. L. sec. 504; Elliott on Railroads (2d Ed.) secs. 200, 1601b; 2 Hutchinson on Carriers (3d Ed.), secs. 1032, 1033; *Chicago, R. I. & P. Ry. Co. v. Armstrong,* 30 Okla. 134, 120 Pac. 952, 39 L. R. A. (N. S.) 126, Ann. Cas. 1913B, 1343. Where, however, the commission, acting within the scope of its authority, prescribes rules and regulations governing transportation and transmission companies, in matters relating to the carriage and transportation of passengers, including the entrance and exit of passengers upon and from the cars or trains of the carrier, and such rules are reasonable and just, they will be held to supersede and annul any previous rules or regulations of the carrier in conflict therewith. Where, however, the

commission has failed to prescribe rules and regulations governing a particular subject under its control, without doubt, under proper limitations, it would remain the province, if not the duty, of the carrier to adopt and enforce its own rules.

It is said that under sections 790, 812, 1411, Rev. Laws 1910, the carrier had a right to demand payment of the fare in advance of the journey. The statutes do give to the carrier the right to demand the fare of passengers either at starting or any subsequent time, and to evict from the vehicle of the carrier any passenger who refuses the payment of his fare or to conform to any lawful regulation of the carrier. Assuming, without deciding, that these statutes are general laws, within the meaning and contemplation of subdivision 4, section 18, art. 9, Constitution, making general laws superior to the rules, regulations, and requirements of the commission in the respects named, still the order of the commission is not in conflict with the statute, for the former has to do only with the practice of the companies in the matter of requiring passengers to show tickets before boarding cars. In aid of the statute requiring the prepayment of fare, the commission penalizes those who undertake to take passage on the trains without the purchase of tickets, where sufficient opportunity therefor is afforded. No appeal is prosecuted from that portion of the order requiring that the carrier shall collect from all passengers one cent a mile, additional, where such passengers board trains at stations where tickets are on sale and reasonable opportunity is afforded to buy tickets. Indeed, as we have seen, it was announced as the fixed policy of the commission to require that passengers buy tickets before getting upon trains. There was considerable evidence which tended to show that the companies' rule with reference to the exhibition of tickets, as practiced by them, failed to serve the pur-

pose for which it was intended; that the exhibition of almost any kind of ticket enabled the passenger to pass the brakeman or flagman, no examination or scrutiny of the tickets offered being made; that a much better rule would be for the trainmen, stationed at point of entrance, to ask the intending passenger his destination. Doubtless this latter evidence was considered in reaching its conclusion that the interests of all concerned—the traveling public, the carrier, and the state—would best be subserved by subjecting the passenger who failed to buy a ticket to the payment of a penalty; and we are not prepared to say, from the record before us, that the commission's decision in this regard was either unreasonable or unjust. It is shown that the commission ordered placards to be posted in conspicuous places in all stations, containing the information that passengers boarding trains without tickets would be charged an additional one cent per mile, thus showing that the commission was using its utmost endeavor to require of all passengers the prepayment of their fares.

The second portion of the order appealed from provides that the rear vestibule door of the smoking car and one door of each first-class car, as well as the entrance to the negro car or compartment, shall be opened. The Constitution gives to the order of the commission the presumption that it is *prima facie* just, reasonable, and correct. Section 22, art. 9, Constitution; *Atchison, T. & S. F. R. Co. v. State et al.*, 23 Okla. 210, 100 Pac. 11, 21 L. R. A. (N. S.) 908; *Atchison, T. & S. F. R. Co. v. State et al.*, 23 Okla. 510, 101 Pac. 262; *Missouri, K. & T. R. Co. v. State*, 24 Okla. 331, 103 Pac. 613; *Chicago, R. I. & P. Ry. Co. v. State et al.*, 24 Okla. 370, 103 Pac. 617, 24 L. R. A. (N. S.) 393; *St. Louis & S. F. R. Co. v. Newell et al.*, 25 Okla. 502, 106 Pac. 818; *St. Louis, I. M. & S. Ry. Co. v. State*, 28 Okla. 372, 111 Pac. 396, 114 Pac. 1096. On appeal the

burden is on the appellant to overcome this presumption. This may be done by showing that the facts found affirmatively show the order to be unreasonable or unjust, or that there is evidence in the record upon which the commission has made no finding, or upon which it has incorrectly made findings of fact, which shows that the order is unjust or unreasonable. There is evidence in the record authorizing the reasons given by the commission for its order in the latter regard; and, while there is strong evidence to the contrary, we are not prepared to say that the commission's action is unjust, or unreasonable. Neither can we say that the statement made and the reasons assigned are without sufficient evidence in their support. It is not sufficient that we may say that a different conclusion was authorized. Presumptively, the order is correct, just, and reasonable, and must so be treated until overcome in the manner indicated. If it should hereafter be shown that the rules prescribed by the commission work a hardship or are unnecessarily burdensome, that body is clothed with authority to alter or amend them. Subdivision 1, section 18, art. 9, Constitution.

For the reason stated, the action of the commission is affirmed.

All the Justices concur.