## UNITED STATES EXPRESS CO. v. STATE *et al.*

No. 3962.    Opinion Filed June 22, 1915.

(150 Pac. 178.)

1.  **CARRIERS—Rules—Power to Make—Corporation Commission.**
    A common carrier has the right to conduct its business in this
    state according to the rules of the common and statutory law, and
    may make and enforce reasonable rules and regulations fixing the
    times and places, the methods and forms, in which it will receive
    the various commodities it undertakes to carry, when such rules
    do not contravene any rule of law or lawful regulation pre-
    scribed by the Corporation Commission.

2.  **SAME.** Rules and regulations of a common carrier prescribed
    by it for the conduct of its business, when inconsistent with the
    rules and regulations lawfully prescribed by the Corporation
    Commission, are unlawful and void under section 18, art. 9, of the
    Constitution.

3.  **CARRIERS—Order of Corporation Commission—Presumption on
    Appeal—Rebuttal.** On appeal from an order of the Corporation
    Commission, the presumption obtains by virtue of section 22, art.
    9, of the Constitution, that the order appealed from is just, rea-
    sonable, and correct; and the burden is upon the appellant to
    overcome this presumption, which may be done by showing that
    the order is unreasonable upon the facts found by the commis-
    sion, or that the evidence does not support the findings, or that it
    is shown by the evidence in the record upon which the commis-
    sion failed to make finding, or that the commission erroneously
    found the facts.

4.  **SAME—Reasonableness of Order—Express Companies.** W. lived
    at M., a point on a line of railway 20 miles east of A., a terminal
    point thereon. W. was in the habit of shipping $6,000 in currency
    and $5,000 in specie per week during the shipping season, for
    which the express company charged 40 cents per $1,000 for cur-
    rency and 50 cents per $1,000 for specie. Only one train per day
    carried express from A. to M., which left A. at 7:45 a. m. The
    express company refused to accept money for transportation from
    A. consigned to W. at M., unless tendered before 7 a. m., on the
    day of transportation, for the reason that it had no burglar proof
    safe at A., and would be required to hire a guard at a cost of
    $1.50 per night. The Corporation Commission promulgated an
    order requiring the express company to accept for shipment, on
    the following day, money in amounts not exceeding $1,000, when
    tendered before 5 p. m. **Held,** by the facts shown by the record,
    the order of the commission is reasonable, just, and correct.

    (Syllabus by the Court.)

*Appeal from Corporation Commission.*

A complaint was filed with the Corporation Commission by E. V. Wolverton against the United States Express Company, and, from an adverse order, the Express Company appeals.   Affirmed.

*Cottingham & Bledsoe,* for appellant.

*S. P. Freeling,* Atty. Gen., for appellees.

HARDY, J.   E. V. Wolverton filed complaint with the Corporation Commission against the United States Express Company, alleging that the defendant is a common carrier maintaining an office at Ardmore, a terminal point on the Chicago, Rock Island & Pacific Railway Company; that Mansville, Okla., is located on said railway, and the express company operates an express business over said line of railway, and that said defendant refuses to receive for shipment consigned to complainant all packages and bags of money, except when tendered at its office at Ardmore between the time of opening said office each morning and 7 o'clock a. m.; and praying that an order be made commanding said defendant to receive for shipment, within reasonable business hours, such packages and bags of money or other valuables as may be tendered.

The defendant filed answer, admitting that it conducted an express business over said line of railway from Ardmore to points east thereof; that said railroad operated only one passenger train each way per day, which left Ardmore at 7:45 a. m., arriving at Mansville at 8:24 a. m.; that defendant at all times accepted money for transportation upon said train from Ardmore to Mansville, when tendered on the same day that the train departed; that it had declined to receive money for transportation on the day before which the train departed, alleging that there was ample time in the morning before the departure of said train for the delivery and receipt

of money for transportation thereon from Ardmore to Mansville; that the charge for transporting currency was 40 cents per $1,000 and 50 cents per $1,000 for silver; that in its office at Ardmore it had an ordinary fireproof safe, but did not maintain any night service; that, to secure protection for such sums of money, it would be necessary to hire a night guard, at a cost of not less than $1.50 per night; and that the defendant had from long experience evolved and prescribed certain rules for the transportation of currency and other kinds of money, and said rules are reasonable and just and afford fair and reasonable accommodations to its patrons, and that, according to said rules, shipments of money and valuable packages would only be received during office hours, but would not be received during office hours after the departure of the last train on which shipments could have been made.

At the trial the complainant testified that he was cashier of the First National Bank of Mansville, a town 20 miles east of Ardmore; that the First National Bank of Ardmore had tendered the defendant during afternoon hours, for shipment to complainant, certain sums of money, which had been refused, the express company giving as its reasons therefor that the total amount of such business would not justify them in maintaining a night force, and it had no adequate equipment to protect valuables over night; that there was just one train carrying express out of Ardmore, leaving at 7:45 a. m., daily; that the banks at Ardmore have regular bank equipment, including a burglar proof safe, which costs from $850 to $2,500; that its takes ten minutes to open the bank vault at Ardmore, and that he usually ships money in packages of from $1,000 to $3,000, averaging about $6,000 a week in currency and about $5,000 a week in silver during the shipping season. The evidence for the defendant was to

the effect that the defendant received all moneys for transportation to be transported on the day on which it was offered; that it always did so when tendered sufficiently long before the train left for it to be billed; that the company had no means of protecting money at night other than a fireproof safe; that it did not maintain a night force; that, if shipment were accepted in the afternoon for transportation to Mansville the next day, it would be necessary to hire a guard, which would cost $1.50 per night; that the company had a rule with reference to the handling of currency or valuables, prohibiting the receipt of the same after the departure of the train on which it might have been carried for the day, when it would necessitate the holding of the money in the office over night; that this is a general rule of the company, based upon transportation charges and the necessary risk incidental thereto, not including the risk of storage; that it usually required about 30 minutes to bill and get money tendered for shipment on the train.

The commission made an order directing the defendant to receive money in amounts not to exceed $1,000 in one day when it was necessary to keep the same over night, during office hours, prior to 5 o'clock p. m., to be transported to Mansville on the train that leaves Ardmore before 7:30 a. m. the next day; and the express company prosecutes this appeal.

Appellant urges that the order appealed from is unreasonable and unjust, and is an unnecessary burden, and claims that, as a common carrier, it has the right to prescribe rules and regulations for the conduct of its business in accordance with the rules of the common and statutory law. A common carrier has the right in this state to conduct its business according to the rules of the common and statutory law, and it is bound to receive and transport goods of the character which it offers to carry, at reason-

able times and places, and may make and enforce reasonable rules and regulations fixing the times and places, the methods and forms, in which it will receive the various commodities it undertakes to carry, when such rules do not contravene any rule of law or lawful regulation prescribed by the Corporation Commission. And it may not lawfully refuse to receive them for carriage within a reasonable time before transportation can commence, and the mere fact alone that the carrier becomes an insurer of the safety of the articles delivered to it does not authorize it to refuse to receive same when tendered within a reasonable time before transportation commences. *Platt v. Lecocq,* 158 Fed. 723, 85 C. C. A. 621, 15 L. R. A. (N. S.) 558; *Harp v. C. O. & G. Ry. Co.,* 61 C. C. A. 405, 125 Fed. 445; *Lake Shore & Mich. Ry. Co. v. Smith,* 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858; *Alsop v. Southern Express Co.,* 104 N. C. 278, 10 S. E. 297, 6 L. R. A. 271.

Section 787, Rev. Laws 1910, provides:

"A common carrier must, if able to do so, accept and carry whatever is offered to him, at a reasonable time and place, of a kind that he undertakes or is accustomed to carry."

The appellant contends that the rule prescribed by it by which it declines to receive for transportation money tendered for shipment on the following day, is reasonable and evolved from long experience, and that the order of the commission requiring it to receive money on the day before it is to be transported is unreasonable and unjust, and therefore should not be sustained.

Section 18, art. 9, Const. (section 234, Wms. Ann. Const.), invests the Corporation Commission with power and authority to make rules and regulations governing transportation and transmission companies, and provides that all rules and regulations prescribed by the carrier which are inconsistent with those adopted by the commis-

sion, within the scope of its authority, are unlawful and void. Under this section of the Constitution, where the commission, acting within the scope of its authority, has prescribed rules and regulations governing transportation and transmission companies in matters relating to the carriage and transportation of articles of a kind which it undertakes or is accustomed to carry, the rules and regulations prescribed by it will supersede any rule or regulation prescribed by the carrier in conflict therewith. *St. L. & S. F. Ry. Co. v. Travelers' Corp., ante,* 148 Pac. 166.

The order appealed from is in direct conflict with the regulation of the appellant, and, if the order is valid, the regulation of the carrier would be unlawful and void. By section 22, art. 9, Const., the order of the commission is given the presumption in this court that it is *prima facie* just, reasonable, and correct as to the facts found. *A., T. & S. F. Ry. Co. v. State,* 23 Okla. 210, 100 Pac. 11, 21 L. R. A. (N. S.) 908; *A., T. & S. F. Ry. Co. v. State,* 23 Okla. 510, 101 Pac. 262; *M., K. & T. Ry. Co. v. State,* 24 Okla. 331, 103 Pac. 613; *C., R. I. & P. Ry. Co. v. State,* 24 Okla. 370, 103 Pac. 617, 24 L. R. A. (N. S.) 393; *St. L. & S. F. Ry. Co. v. Newell,* 25 Okla. 502, 106 Pac. 818; *St. Louis, I. M. & S. Ry. Co. v. State,* 28 Okla. 372, 111 Pac. 396, 114 Pac. 1096; *St. L. & S. F. Ry. Co. v. Travelers' Corporation, supra.* And upon appeal the burden is upon the appellant to overcome this presumption, which may be done by showing that the facts affirmatively found by the commission show the order to be unreasonable and unjust, or by showing that the commission failed to make findings upon evidence which is in the record, or that its findings are not justified by the evidence. *St. L. & S. F. Ry. Co. v. Travelers' Corp., supra; M., K. & T. Ry. Co. v. State, supra.*

In the case of *Alsop v. Southern Express Co., supra,* the Supreme Court of North Carolina, in determining a

similar question, held that under a statute requiring carriers to receive all articles, "whenever tendered," an express company was liable to a penalty of $50, under the terms of the act, for refusing to accept at 2 p. m. money intended to be transported on a train leaving the next day at 12:55 p. m., while the Circuit Court of Appeals for the Eighth Circuit, in the case of *Platt v. Lecocq, supra,* held that it was unreasonable to require an express company to receive money and specie tendered to it by a bank for carriage on certain trains which left Aberdeen, S. D., at 6:30, 7, and 7:45 a. m. during all reasonable business hours of the day preceding the departure of these trains.

The question of what is a reasonable time at which a common carrier should receive money or other valuables for transportation is necessarily a question of fact depending upon the particular circumstances of the case, from all of which the court must determine whether or not the rule of the commission appealed from is reasonable.

In the Alsop Case the court found it reasonable to require the express company to assume the risk of storage over night, when tendered at a reasonable hour in the afternoon, rather than one who apparently had no means or place for properly caring for the money tendered, while in the Lecocq Case the court deemed it reasonable to require the bank, which was properly equipped for safekeeping of money, to take the risk, rather than the express company, which did not possess a safe place for storage of valuables. In the Lecocq Case the court calls attention to the fact that no shipper or person other than the bank was complaining; and the chief value of these two cases is to show under what circumstances the court considered it reasonable to require the express company to assume the risk, and under what circumstances it was considered reasonable for the shipper to assume the risk.

At common law the carrier was under no obligation to receive articles tendered for shipment until ready to start upon his journey. *Lane v. Cotton,* 1 Lord Raymond, 646. In the Alsop Case, *supra,* in discussing the relative duties of the carrier at the time of the decision in *Lane v. Cotton,* and at the time of the decision in that case, the court said:

"It may have been just at that early period to require the shipper, who had protected his goods on the way to the point of delivery, to continue his oversight over them rather than force a driver, whose attention is required to be devoted to the preparation for his journey, or the master of a vessel, who, with his crew, was engaged in repairing and inspecting it and laying in supplies for a voyage, to take them prematurely, for that would have made it requisite for them to prepare a place for storage, which they need not otherwise provide. But an express company, as we have seen, incurs, from its nature, such liabilities as to require a place of storage at every station, so guarded as to the safety of property consigned to its care, and it is not unreasonable to require the same care of money tendered for shipment during business hours."

In the Lecocq Case the court, in holding the order of the South Dakota Railroad Commission to be unreasonable, said:

"The reasonableness of the time for their receipt is not to be determined by its relation to ordinary business hours alone, but by its relation to the business of transportation of such packages, by the fact that this business is not and cannot be transacted in ordinary business hours, by the risks and liabilities entailed by receiving and storing such valuable and easily stolen packages, by the relative facilities and safeguards of the carrier and its customers for safely keeping money before the transportation commences, and by all the pertinent facts and circumstances of the case."

In *Marshall v. American Express Co.,* 7 Wis. 1, 73 Am. Dec. 381, the Supreme Court of that state held that an offer of delivery by an express company to a bank at

5 o'clock p. m., which was after ordinary banking hours, was within a reasonable time, and that, upon the failure of the bank to accept a tender thereof, the express company would be discharged from its liability as a carrier.

Under the evidence in this case, it appears that the complainant lived at Mansville, a small town on the Rock Island Railroad, 20 miles east of Ardmore, and that appellant conducted an express business over said line of railway, being the only railroad through said town, and the only express company doing business over said line of railway; that express was carried on only one train per day, which left Ardmore at 7:45 a. m.; that complainant was in the habit of shipping an average of $6,000 in currency per week and $5,000 in silver per week, during the shipping season, which appellant had refused to accept for shipment, except on the morning on which the train departed, thereby necessitating the opening of the bank vault at Ardmore a sufficient length of time before the departure of said train to permit the billing and shipment of said money thereon; that it required ten minutes to open the vault of the bank, and ten minutes to transport same to the express office, and usually required 30 minutes for billing same. Upon this state of facts, the commission found it was unreasonable for the appellant to refuse to receive money the day before, and ordered it to receive shipments not to exceed $1,000 per day, when tendered within reasonable business hours, to be shipped on the train leaving Ardmore the follownig morning. Appellant urges that this order is an unnecessary burden because of the fact that the charges for shipment of this money are 40 cents per $1,000 for currency and 50 cents per $1,000 for specie, and that it would be required to hire a guard at night, which would involve an expenditure of $1.50 per night.

This fact alone does not necessarily determine that the order appealed from is unreasonable; it not appearing

that the loss from this item of business would materially affect the gross income of appellant, so that same would be less than its operating expenses, fixed charges, and a reasonable return upon the capital invested in its business, although the fact that the service would be rendered at a pecuniary loss is an important fact to be taken into consideration in determining the reasonableness of the order; but this is not the only fact, nor is it necessarily the controlling one to be considered in deciding this question. *St. L. & S. F. Ry. Co. v. Gill,* 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; *Minneapolis & St. L. Ry. Co. v. Minnesota,* 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151.

Besides, the primary purpose of the order is not to fix rates to be charged by the appellant for the service required, and appellant may apply to the Corporation Commission at any time for a readjustment of its rates for the service required, so as to permit it to prescribe such rates for this and other service as will enable it to receive from its business fair and equitable revenues, if the same should be shown to be inadequate. If we were to say that the order was unreasonable simply for the reason that appellant had failed to provide a proper means for insuring the safety of money and valuables intrusted to it, the same reason would render invalid an order to accept like consignments for shipment on a train leaving at an earlier hour, and thus require the shipper to stand guard during the night and tender his articles just prior to the departure of the train, as at common law. While it may have been unreasonable to require the express company in the Lecocq Case to assume the risk when the bank had proper equipment for the safety of the money and the express company did not, that decision is not authority compelling us to hold in this case, where the complainant lives at a place other than the point of origin, that he must so arrange matters that the care and custody of his

money will be provided for so that the express company will be under no obligations to accept same until immediately prior to the departure of the train. Shipments of money and valuables from other points in this state, passing through Ardmore to Mansville, are handled by appellant without question, and it appears to be an unjust discrimination to hold that a shipment originating at Oklahoma City consigned to Mansville, which should arrive at Ardmore in the afternoon of one day, should be cared for and forwarded to its destination on the following day, when a shipment of like character originating at Ardmore should be refused, unless tendered before 7 a. m. on the day of transportation. To so hold would be to say that the reasonableness of any order affecting a common carrier was to be determined solely by the facilities which it saw fit to provide and by its own convenience in the handling of its business. This is not the true test under the authorities cited.

Complaint is made of the admission of certain letters in evidence offered by complainant. If we assume that this question may be raised in this proceeding, no exceptions were saved because of the admission thereof, and the error, if any, in this particular, we think was waived. There is sufficient competent evidence to sustain the finding of the commission, and the admission of the evidence complained of is not sufficient ground for reversal of this case. M., K. & T. Ry. Co. v. State, supra, 24 Okla. 331, 103 Pac. 613.

There can be no misunderstanding of the order of the commission as to what train is meant, for the evidence shows that only one train leaves in the forenoon, and this is the only train upon which express is carried.

Under the evidence in this case, we are not prepared to say that the presumption in favor of the order that it

APRIL TERM, 1915.—VOL. XLVII.    667

is just and reasonable has been overcome, and same is, therefore, affirmed.

All the Justices concur.